**Carl Edwin MARTIN, II, Appellant,**

**v.**

**The STATE of Texas, State.**

**No. 2–04–233–CR.**

Court of Appeals of Texas, Fort Worth.

Oct. 13, 2005.

41. *Id.* at 771–72 (emphasis added).

42. *See* Tex.R.App. P. 21.1.

Mark Pilard, Granbury, for appellant.

Robert T. Christian, Dist. Atty., Granbury, for appellee.

PANEL B: DAUPHINOT, WALKER, and McCOY, JJ.

## OPINION

BOB McCOY, Justice.

### I. Introduction

A jury found Appellant Carl Edwin Martin, II guilty of the offenses of sexual assault and indecency with a child, and the trial judge sentenced him to life imprisonment. In eight issues, Martin challenges his conviction. We affirm.

### II. Factual and Procedural Background

A grand jury indicted Martin on December 18, 2002 for the offense of aggravated sexual assault and indecency with a child with a felony enhancement. Count one of the indictment charged that Martin, on or about the 8th day of August 1998, did then and there intentionally or knowingly cause the mouth of the complainant, a child younger than fourteen years of age who was not his spouse to contact his sexual organ. Count two of the indictment charged that Martin, on or about the 8th day of August 1998, did then and there intentionally, with the intent to arouse or gratify his sexual desire, engage in sexual contact by touching the breast of the complainant, a child younger than seventeen years of age and not his spouse.

On February 18, 2003, Martin filed a request for notice of State's intention to introduce evidence of other crimes, wrongs or acts pursuant to article 37.07 of the Texas Code of Criminal Procedure and Texas Rule of Evidence 404(b). On December 29, 2003, Martin filed a request for notice of State's intention to introduce evidence of extraneous offenses or acts pursuant to article 38.37, section 3 of the Texas Code of Criminal Procedure. Martin received a response to his requests on May 3, 2004, seven days prior to trial, listing 16 article 37.07 crimes, wrongs, or bad acts for use in the punishment phase; 9 article 38.37 crimes, wrongs, or bad acts for the State's case-in-chief to show the state of mind and relationship between Martin and S.D.; and 2 404(b) crimes, wrongs, or bad acts [1] for the State's case-in-chief for the purpose of providing motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or accident. Many of the offenses noticed pursuant to article 38.37 alleged the occurrence of the offenses on at least a monthly basis over a period of years.

On May 4, 2004, Martin filed a motion for pretrial evidentiary hearing to determine admissibility of extraneous offenses, a written objection to admissibility of extraneous offense, requested findings of fact and conclusions of law, and limiting instructions. Prior to voir dire, Martin

---

1. The second noticed crime, bad act, or wrong did not refer to a specific offense, but instead advised Martin, for purposes of Rule 404(b), that the State intended to introduce evidence of crimes, bad acts, or wrongs previously listed in the letter under the notices for articles 37.07 and 38.37 of the code of criminal procedure.

urged the court to consider his motions with respect to the potential admission of extraneous matters and requested that the trial court conduct an evidentiary hearing outside the presence of the jury. Among other things, Martin specifically objected to the admission of evidence of the extraneous offense of rape, arguing that the evidence was more prejudicial than probative. Martin also argued that the State's notice of extraneous offenses was insufficient. The trial court determined that no evidentiary hearing was required and determined that the extraneous offense evidence was admissible and that its probative value outweighed its potential for prejudice. The trial judge indicated, however, that if the extraneous offense evidence supported it, he would give a limiting instruction on extraneous offenses in the jury charge and, if requested at the time of the presentation of the evidence, he would give a limiting instruction at the time of the presentation of the evidence. Martin also urged his objection under article 38.37 of the code of criminal procedure, arguing that article 38.37 was unconstitutional and in violation of the Sixth Amendment right to a trial in front of an impartial jury. The trial court overruled Martin's objection to article 38.37's constitutionality.

After the jury was impaneled and sworn but before opening argument, Martin again raised his objections as to proper notice and unfair prejudice. The trial court heard evidence from S.D. outside the presence of the jury and ruled that the noticed extraneous offense evidence was admissible and that its probative value outweighed its potential for prejudice.

At trial, the complainant testified that she was approximately five years old when she first met Martin. She testified that her parents were divorced and that Martin was her mother's boyfriend. She stated that she initially liked Martin, that he was nice, and that he treated her mother and sister well. She indicated, however, that as she got older things changed. She testified that at age eleven, Martin began to play a game with her in which she would stand up and fall back without bending her knees, trusting that Martin would catch her. She stated that it was during this game that Martin began to touch her breasts and that one day when she fell back on him she felt his erect penis.

S.D. testified that while she was in the eighth grade, she would talk with Martin about her friends and how they were smoking cigarettes and experimenting with marijuana and other stuff. She stated that he told her that "it was okay, everybody did it, and that if [she] wanted to do it that [she] should [come] to him first." She testified that he provided her with cigarettes. One day, in response to her inquiry as to whether he had ever smoked pot, he responded by stating that "he had and he still does and that he just happened to have a joint on him." She testified that he then provided her with some marijuana and that she went to her room and smoked it. She testified that she and Martin also talked about her boyfriends and how far her and her boyfriends had gone sexually. Martin told her that sex was okay, that it was healthy, and that it was just sex. She stated that at age thirteen, Martin told her that he was no longer having sex with her mother because her mother had gained weight, was too fat, and that he did not enjoy it. She stated that he would tell her how beautiful she was, how nice her body was, and how her breasts were so perfect.

S.D. testified that while she was in the ninth grade, she confided in Martin that she was no longer a virgin. She indicated that his response was to write her a check for "like $150" and to tell her that he

would give her a check each week if she would have sex with him. She stated that Martin told her that, in addition to the money, she could have cigarettes and smoke pot with him whenever she wanted and that he would provide her transportation to her boyfriend's house. She testified that she told him that she would think about it. S.D. then testified regarding an incident in which she requested a ride to her boyfriend's house; for the ride, Martin required that she touch his penis. She stated that she was scared and started crying, to which Martin suggested that he touch her. She testified that Martin then got behind her, put his hand on her breast, and pinched her nipples. She testified that afterwards he took her to her boyfriend's house. She stated that this was the first time that he had touched her breast under her clothes, that she was fourteen at the time, and that she was in the ninth grade.

S.D. then testified that whenever she asked Martin for marijuana or rides to her boyfriend's house, Martin would require that she do something sexual with him. She testified that for a couple of months breast touching was enough, but after that he told her the sexual activity would need to progress if he was to keep doing things for her. She stated that he told her the next step was to touch his penis, and then she described a time when she did so in exchange for marijuana. She testified that at age sixteen, Martin requested that she perform oral sex on him and that when she tried to put him off, he threatened to report her boyfriend for statutory rape. She stated that she gave him oral sex, but that he told her it was not good enough, that she "should do it like her mom used to," i.e., that she should use "her hands as well as her mouth." S.D. testified that "it was horrible," that she "hated him," and

that "it was like [she] just felt dead inside." Finally, S.D. testified regarding a time when she called Martin for help while stranded with a flat tire with her boyfriend in Fort Worth. She stated that Martin drove from Granbury to Fort Worth and repaired the tire, then he insisted that she ride with him to Granbury. She testified that upon their return home, Martin told her that he was going to have sex with her. She stated that she told him that she did not want to but that he told her she really did not have a choice. She testified that he told her to go into the bedroom and take off her pants; after she did so, he got on top of her, told her to open her legs, and "put his penis inside of [her]." She testified that she was crying and shaking such that he had to hold her arms back.

In November 2001, S.D. told her probation officer of the sexual abuse.[2] S.D. was subsequently interviewed by Heather Brogan with Child Protective Services (CPS) regarding her outcry. In that interview, S.D. recanted and indicated that she did not want to discuss the matter. At trial, S.D. testified that between the time of her outcry to her probation officer and the time of her initial interview with Brogan, she spoke with Martin about her outcry to her probation officer. She testified that Martin told her that if all this came out, they would lose their house, have to live in a "little bitty" apartment, and their whole family would be messed up. She testified that she recanted because she was scared of Martin, scared of losing their house, and scared of her mother being upset. The following spring, S.D. was put in detention after a urinalysis returned positive for marijuana use. It was at this time that S.D. made a second outcry to her probation officer, telling Brogan with CPS about the sexual abuse. Brogan testified regard-

2. The record reflects that S.D. was on probation for truancy.

ing both interviews with S.D. The trial court admitted into evidence the videotapes of both interviews. Several other persons testified at trial, including S.D.'s mother, who testified that S.D. told her, following S.D.'s initial outcry to her probation officer, that Martin had raped her. S.D.'s mother admitted that she did not report the abuse. Martin testified in his own defense, denying S.D.'s allegations.

A jury convicted Martin of the lesser included offense of sexual assault and of indecency with a child. He pleaded true to the enhancement paragraph. The trial court assessed punishment for both counts at life imprisonment.

### III. Extraneous Offense Evidence of Rape

In his first issue, Martin contends that the trial court abused its discretion by admitting, over objection, extraneous offense evidence against him that he raped S.D. Specifically, Martin argues that S.D.'s testimony, regarding an occasion in which she alleged that Martin "put his penis inside of [her]," was substantially more prejudicial than probative and thus inadmissible under Rule 403 of the Texas Rules of Evidence. TEX.R. EVID. 403. The State responds that the evidence was statutorily relevant pursuant to article 38.37 of the Texas Code of Criminal Procedure,[3] and that the trial court performed a proper balancing test under Rule 403 in determining the evidence to be more probative than prejudicial.

### A. Admissibility

 Under Rule 404(b), evidence of other crimes, wrongs, or bad acts is inadmissible if it is offered to prove the character of a person in order to show action in conformity therewith. TEX.R. EVID. 404(b). Notwithstanding Rule 404, evidence of other crimes, wrongs, or bad acts committed by a defendant against a child who is the victim of the alleged offense is admissible for its bearing on relevant matters, including the state of mind of the defendant and the child and the previous and subsequent relationship between the defendant and the child. TEX.CODE CRIM. PROC. ANN. art. 38.37, § 2; *Jones v. State*, 119 S.W.3d 412, 420 (Tex.App.-Fort Worth 2003, no pet.). However, evidence that is admissible under article 38.37 may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX.R. EVID. 403; *Jones*, 119 S.W.3d at 421.

### B. Rule 403 Balancing Test/Standard of Review

 In evaluating the trial court's determination under Rule 403, a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion," recognizing that the trial court is in a superior position to gauge the impact of the relevant evidence. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex.Crim.App. 1999); *Jones*, 119 S.W.3d at 421–22. When the relevant criteria are viewed objectively and lead to the conclusion that the danger of unfair prejudice substantially outweighs the probative value of the proffered evidence, the appellate court should declare that the trial court erred by failing to exclude it. *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex.Crim.App.1991) (op. on reh'g); *Jones* 119 S.W.3d at 422.

---

3. *See* TEX.CODE CRIM. PROC. ANN. art. 38.37, § 2 (Vernon 2005). On appeal, Martin does not contest the relevancy of the evidence under article 38.37, but argues that such statutory approval does not eliminate the need, when requested by the defendant, for the trial court to conduct a proper balancing test under Rule 403. Martin argues that the trial court did not do this.

The trial court's balancing determination must be measured against the relevant criteria by which a Rule 403 decision is made. *Mozon*, 991 S.W.2d at 847. The relevant criteria in determining whether the prejudice of an extraneous offense substantially outweighs its probative value include; (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense, (2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way," (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense, and (4) the force of the proponent's need for this evidence to prove a fact of consequence, that is, does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute. *Id.* (citing *Montgomery*, 810 S.W.2d at 389–90).

## C. Analysis

■ Martin argues that the prejudicial effect of the extraneous offense evidence was substantially outweighed by its probative value. Specifically, he argues, citing this court in *Jones v. State*, that the objected-to evidence should not have been admitted because evidence of the penetration of S.D.'s sexual organ with his penis was equal to or more heinous than the indicted offenses of oral sex and breast touching. *See* 119 S.W.3d at 422–23 (indicating that all the extraneous acts involving the complainant were less heinous than evidence relating to charged offenses and determining that emotional weight of such evidence was not likely to create such prejudice in minds of jury such that they would have been unable to limit their con-

sideration of evidence to its proper purpose). He also argues that S.D.'s testimony that she was crying and shaking during the rape had the potential to impress the jury in some irrational but nevertheless indelible way, that the testimony of the rape of a girl is just naturally and inherently inflammatory, and that the objected-to evidence does not tend to make a fact of consequence any more likely; rather, he argues that the "only corroborative force" of the evidence was to show that he was behaving in conformity with his character. Finally, Martin argues that if the State had other probative evidence available to it, this court should find that the trial court abused its discretion by admitting the evidence.

The State responds that the probative value of the evidence was not outweighed by the danger of unfair prejudice. In support of its position, the State argues that the evidence was necessary to show that Martin was acting with the "intent to arouse or gratify his sexual desire" and to rebut Martin's claim of fabrication. The State concedes that the objected-to evidence does carry some emotional weight but argues that it was not likely to create unfair prejudice in the minds of the jury. Finally, the State asserts that it did not take an excessive amount of time in developing this testimony.

Applying the Rule 403 balancing criteria set out in *Mozon* and *Montgomery*, we conclude that the trial court abused its discretion by admitting the objected-to extraneous offense evidence. *See* 991 S.W.2d at 847, 810 S.W.2d at 392. While some of S.D.'s testimony regarding the objected-to extraneous offense evidence may have served to make a fact of consequence slightly more probable, i.e., that Martin acted with the *intent to arouse or gratify his sexual desire*, we believe the danger of

unfair prejudice substantially outweighed its probative value.

We estimate from the record that S.D.'s direct testimony regarding the objected-to offense took only about six pages of approximately sixty-six pages of direct testimony. This weighs slightly in favor of admissibility. However, as stated by the court of criminal appeals, "[b]oth sexually related misconduct and misconduct involving children are inherently inflammatory." *Montgomery,* 810 S.W.2d at 397. Here, S.D. was allowed to testify in detail regarding a particularly heinous extraneous offense—the rape of a young girl—and to do so in some detail. We believe that such testimony has significant potential to impress the jury "in some irrational but nevertheless indelible way," creating the potential for the jury to reach a decision on an improper basis. Further, the record reflects there to be substantial other evidence from which a rational jury could have found that Martin acted with the intent to arouse or gratify his sexual desire. Thus, the State had little or no need for this evidence to prove the intent element. Nor do we believe that this evidence was *necessary* for the State to rebut Martin's claims of fabrication.[4] We conclude, therefore, weighing all the factors, that the trial court abused its discretion when it found that the danger of unfair prejudice did not substantially outweigh the probative value of the objected-to extraneous act evidence.

## D. Harm Analysis[5]

We now consider whether the trial court's error is reversible. TEX.R.APP. P. 44.2(b). If the error is constitutional, we apply Rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to Martin's conviction or punishment. TEX.R.APP. P. 44.2(a). Otherwise, we apply Rule 44.2(b) and disregard the error if it does not affect Martin's substantial rights. TEX.R.APP. P. 44.2(b); *see Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999); *Coggeshall v. State,* 961 S.W.2d 639, 642–43 (Tex.App.-Fort Worth 1998, pet. ref'd). The erroneous admission of an extraneous offense does not constitute constitutional error. *Avila v. State,* 18 S.W.3d 736, 741–42 (Tex.App.-San Antonio 2000, no pet.).

Because we determine that the error is not constitutional, Rule 44.2(b) is applicable. TEX.R.APP. P. 44.2(b). Therefore, we are to disregard the error unless it affected Martin's substantial rights. *Id.* A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)); *Coggeshall,* 961 S.W.2d at 643. In making this determination, we review the record as a whole. *See Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

Evidence of a defendant's guilt is also a factor to be considered in any through harm analysis. *See Motilla v. State,* 78 S.W.3d 352, 358 (Tex.Crim.App. 2002). Factors to be considered in weighing the defendant's guilt in the harm analysis include the following: (1) the suf-

---

4. In both his opening statement and closing argument, Martin's defense counsel argued, in effect, that S.D. had a motive to lie and could not be believed. Further, the record reflects that Martin, during the guilt-innocence phase of the trial, testified in his own defense and denied S.D.'s allegations.

5. We note that neither parties' brief provides us with the benefit of a harm analysis.

ficiency of the evidence to support the conviction; (2) the character of the error and its connection with other evidence; and (3) whether the State emphasized the error. *See id.* at 358–59.

Here, the record reflects ample evidence of Martin's guilt. S.D. testified in detail regarding separate and distinct acts sufficient to support the jury's verdict as to each of the charged offenses. In addition, the objected-to evidence was statutorily relevant pursuant to article 38.37 of the code of criminal procedure to show state of mind and to show the relationship between Martin and S.D. TEX.CODE CRIM. PROC. ANN. Art. 38.37. Thus, there existed a legitimate purpose underlying the State's effort to admit the evidence, and we find nothing in the record to suggest that the State offered the evidence as a way to invoke an emotional reaction by the jury. Moreover, the record reflects that although the State did refer to the evidence of intercourse between Martin and S.D. in its closing argument, the record reflects that the State did so to rebut Martin's claim of fabrication and to show Martin's state of mind, the state of mind of S.D., and the relationship between the parties. Further, the record reflects that the trial court provided a limiting instruction regarding testimony of extraneous offenses in the jury charge. *See Morales v. State,* 32 S.W.3d 862, 867 (Tex.Crim.App.2000) (indicating a reviewing court may also consider the trial court's instructions to the jury, the State's theory, any defensive theories, and closing arguments). Absent evidence to the contrary, the jury is presumed to follow the instructions set forth in the trial court's charge. *Hutch v. State,* 922 S.W.2d 166, 172 (Tex.Crim.App.1996). Martin has not rebutted this presumption. Finally, after reviewing the record, we believe that the results of the trial would *not* have been different had the trial court

disallowed the objected-to extraneous offense evidence. *See Motilla,* 78 S.W.3d at 357 (holding evidence of a defendant's guilt is a factor to be considered in any thorough harm analysis).

We conclude that, in the context of the entire case against Martin, the trial court's error in admitting the testimony in question did not have a substantial or injurious effect on the jury's verdict and did not affect Martin's substantial rights. *See King,* 953 S.W.2d at 271. Thus, we disregard the error. *See* TEX.R.APP. P. 44.2(b). We overrule Martin's first issue.

## IV. The Requirement for a Contemporaneous Limiting Instruction

In his third issue, Martin contends that the trial court erred by failing to give a contemporaneous limiting instruction at the time the extraneous offense evidence of rape was admitted. The State responds that Martin failed to request a limiting instruction at the time the evidence was admitted. Consequently, the State asserts that the evidence was admitted for all purposes and that Martin forfeited error, if any.

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; but in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal. TEX.R. EVID. 105(a). The party opposing evidence has the burden of requesting the limiting instruction at the introduction of the evidence. *Hammock v. State,* 46 S.W.3d 889, 895 (Tex.Crim.App.2001). Further, if a limiting instruction is to be given, it must be when the evidence is admitted to be

effective. *See Rankin v. State,* 974 S.W.2d 707, 712 (Tex.Crim.App.1996). Once evidence is received without a limiting instruction, it becomes part of the general evidence and may be used for all purposes. *See Garcia,* 887 S.W.2d at 878.

S.D.'s testimony, regarding an occasion in which she alleged that Martin "put his penis inside of [her]," would have been subject to a limiting instruction, if one had been properly requested. *See Abdnor v. State,* 871 S.W.2d 726, 738 (Tex.Crim.App. 1994). The first opportunity to request a limiting instruction on that portion of S.D's testimony was contemporaneous with admission of the evidence. At that point, it was apparent that a limiting instruction was proper. Martin argues that he attempted to request a limiting instruction from the court at that time but was cut off by the prosecutor and the Court. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX.R.APP. P. 33.1(a)(1); *Mosley,* 983 S.W.2d at 265. Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R.APP. P. 33.1(a)(2); *Mendez v. State,* 138 S.W.3d 334, 341 (Tex.Crim.App.2004). Here, it appears that Martin objected to the extraneous evidence, rather than requesting a limiting instruction. Moreover, Martin's request for a limiting instruction after two additional witnesses testified was untimely. Because Martin did not request a limiting instruction at the first opportunity, the evidence was admitted for all

purposes. *See Hammock,* 46 S.W.3d at 895 (holding when a party fails to ask for a limiting instruction until later in the trial, evidence is admitted for all purposes); *Jones,* 119 S.W.3d at 424 (holding when a party requests a limiting instruction concerning a witness's testimony after the witness testifies, the evidence is admitted for all purposes). We hold that Martin forfeited any error with respect to the trial court's refusal to give a contemporaneous limiting instruction with S.D.'s testimony. We overrule Martin's third issue.

## V. Reasonableness of the State's Notice of Extraneous Offense Evidence

In his second and fifth issues, Martin attacks the reasonableness of the State's notice of extraneous offenses. In his fifth issue, Martin argues that the trial court erred by admitting the extraneous offense evidence because the State's notice was not reasonable notice in advance of trial as required by article 38.37 of the Texas Code of Criminal Procedure and Rule 404(b) of the Texas Rules of Evidence. *See* TEX.R. EVID. 404(b); TEX.CODE CRIM. PROC. ANN. art. 38.37, § 3. In his second issue, citing the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, Martin argues that the trial court's error in admitting the evidence without proper notice violated his right to select an impartial jury.[6] *See* U.S. CONST. amends. V, VI, XIV.

Article 38.37 of the code of criminal procedure provides that a defendant who timely requests notice of the State's intent to introduce extraneous offenses during the State's case-in-chief is entitled to notice "in the same manner as the state is required to give notice under

---

6. To the extent that Martin's second issue may be construed to challenge the constitutionality of article 38.37 of the Texas Code of Criminal Procedure, we address that contention in response to Martin's fourth issue.

Rule 404(b)." TEX.CODE CRIM. PROC. ANN. art. 38.37, § 3. Rule 404(b) provides that the notice of the State's intent be "reasonable notice ... in advance of trial." TEX.R. EVID. 404(b). The purpose behind the notice provision is to adequately make known to the defendant the extraneous offenses the State intends to introduce at trial and to prevent surprise to the defendant. *Self v. State*, 860 S.W.2d 261, 264 (Tex.App.-Fort Worth 1993, pet. ref'd). Generally, what constitutes reasonable notice under Rule 404(b) depends on the facts and circumstances of the case. *Sebalt v. State*, 28 S.W.3d 819, 822 (Tex.App.-Corpus Christi 2000, no pet.). We review a trial court's ruling as to the admissibility of extraneous offense evidence under an abuse of discretion standard. *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex.Crim.App. 1996).

Here, Martin argues that the State's notice, provided seven days before trial, was insufficient and unreasonable given (1) the advance request for notice, (2) the number of offenses and occurrences noticed, and (3) the more heinous nature of the noticed extraneous offense of rape. The State responds that the trial court did not err because Martin was given sufficient and reasonable notice in advance of trial. Further, the State asserts that Martin should not have been surprised by the extraneous offenses contained in the State's notice because the information in the notice came from the offense report and witness statements contained in the State's file which had been open to Martin's defense counsel since the return of the indictment.

The record reflects that Martin made a request for notice of the State's intention to introduce evidence of other crimes, wrongs, or bad acts pursuant to article 37.07 and Rule 404(b) on February 18, 2003. In addition, the record reflects that Martin filed a request for notice of the State's intention to introduce evidence of extraneous offenses or acts pursuant to article 38.37 on December 29, 2003. Neither side contests that the State did not deliver its response to the foregoing requests until May 3, 2004, just seven days before trial. The record also reflects that at least twenty days before trial, the State provided Martin with a copy of the second videotaped interview between S.D. and Brogan, the CPS caseworker, wherein S.D. set forth her allegations against Martin.

Finally, the record reflects that prior to voir dire, Martin objected to the reasonableness of the State's notice of extraneous offenses and that he re-urged that objection after the jury was empaneled and sworn but before opening arguments. We find nothing in the record to indicate that Martin requested a continuance. Having failed to do so, Martin has waived any complaint that he was surprised by the State's notice. *See Koffel v. State*, 710 S.W.2d 796, 802 (Tex.App.-Fort Worth 1986, pet. ref'd) (indicating failure to request a continuance waives any error urged on appeal on the basis of surprise) (citing *Lindley v. State*, 635 S.W.2d 541, 544 (Tex.Crim.App.1982)). Further, even if we assume that Martin preserved error, we cannot say that the trial court abused its discretion when it overruled his objections to the reasonableness of the State's notice because under the circumstances of this case, we believe that the trial court could have determined that seven days' notice was adequate and reasonable given that the State's file had been open to Martin's defense counsel since the return of the indictment and that at least twenty days before trial the State provided Martin's defense counsel with a copy of the videotaped interview between S.D. and CPS wherein S.D. sets forth her allega-

tions against Martin.[7] *See Self,* 860 S.W.2d at 264 (holding eleven-days' advance notice of unadjudicated matter reasonable under Rule 404(b)); *Sebalt,* 28 S.W.3d at 822 (holding three days' notice before trial of intent to use extraneous offenses in statement to police reasonable under article 38.37 and Rule 404(b)); *see also Hernandez v. State,* 914 S.W.2d 226, 234 (Tex.App.-Waco 1996, no pet.) (holding notice provided on Friday before trial on Monday untimely under Rule 404(b)). We overrule Martin's second and fifth issues.

## VI. The Constitutionality of Article 38.37

In his fourth issue, Martin challenges the constitutionality of article 38.37 of the code of criminal procedure. Specifically, Martin argues that article 38.37 is overly broad, circumvents the rules of evidence prohibiting extraneous offense evidence, and violates the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, particularly a defendant's right to due process and an impartial jury. *See* U.S. Const. amends. V, VI, XIV; Tex. Code Crim. Proc. Ann. art. 38.37.

### A. Standard of Review

■■■■ An appellate court must review the constitutionality of a statute in light of the presumption of the statute's validity. *Jenkins v. State,* 993 S.W.2d 133, 135 (Tex.App.-Tyler 1999, pet. ref'd). We must presume that the legislature did not act unreasonably or arbitrarily in enacting the statute. *Ex parte Granviel,* 561 S.W.2d 503, 511 (Tex.Crim.App.1978).

The burden is on the appellant to show that the statute is unconstitutional. *Id.*

### B. Analysis

■■■■ Article 38.37 statutorily expands the admissibility of extraneous acts evidence in a trial involving certain offenses committed against a child under seventeen years of age. It provides,

> [n]otwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
>
> (1) the state of mind of the defendant and the child; and
>
> (2) the previous and subsequent relationship between the defendant and the child.

Tex.Code Crim. Proc. Ann. art. 38.37, § 2.

The issue of whether article 38.37 unconstitutionally infringed upon a defendant's right to a fair and impartial trial was addressed by the Tyler Court of Appeals in *Jenkins.* 993 S.W.2d at 136. In finding article 38.37 to be constitutional and not violative of appellant's due process rights, the Tyler Court of Appeals stated that,

> [t]he special circumstances surrounding the sexual assault of a child victim outweigh normal concerns associated with evidence of extraneous acts. Further, the fairness of the tribunal is preserved by a defendant's continuing right to challenge the witness by cross[-]examination. Having examined article 38.37

7. This is not to say that the opening of the State's file or the State's providing Martin with a copy of the videotaped interview served as "notice" to Martin of what extraneous offenses the State intended to introduce at trial, as the court of criminal appeals had held that the mere opening of the State's file does not indicate an "intent to introduce"

such evidence. *See Buchanan v. State,* 911 S.W.2d 11, 15 (Tex.Crim.App.1995). However, we have considered these facts in evaluating the reasonableness of the State's notice, just as we have considered the volume of noticed offenses, Martin's advance request for the notice, and the nature of the offenses noticed.

in light of the presumption of validity, we find the article is constitutional and not violative of Appellant's right to due process.

*Id.* at 135.

This position was subsequently adopted by the Waco Court of Appeals in *Brantley v. State,* 48 S.W.3d 318, 329–30 (Tex.App.-Waco, 2001, pet.ref'd). We join with these two courts in holding that article 38.37 is constitutional and not violative of Martin's constitutional right to due process. *See id.; Jenkins,* 993 S.W.2d at 135; *see also Phelps v. State,* 5 S.W.3d 788, 798 (Tex. App.-San Antonio 1999, pet. ref'd) (holding appellant was not denied right to a fair trial guaranteed by the due process clause of the Fourteenth Amendment to the U.S. Constitution and section 19, article I of the Texas Constitution by admission of evidence of numerous extraneous bad acts, including nineteen that constituted criminal offenses, during the innocence or guilt phase of the trial). We overrule Martin's fourth issue.

## VII. Admissibility of Victim–Impact Testimony

In his sixth issue, Martin argues that the trial court erred by admitting testimony during the guilt innocence phase of the trial as to S.D.'s relationship with her fiancé at the time of trial. Specifically, Martin complains about the following testimony solicited by the prosecutor at trial:

[Prosecutor]: You feel like you've put all this behind you?

[S.D.]: Yes.

[Prosecutor]: Are there any—are you ever reminded of this?

[S.D.]: Yes, sometimes.

[Prosecutor]: Can you explain that to the jury?

[Defense Counsel]: I'm going to go ahead and make a relevancy objection and—

[Prosecutor]: It goes to the state of mind of the victim, Your Honor.

[The Court]: Overruled.

. . . .

[S.D.]: Sometimes when I'm being intimate with my fiancé and it's supposed to be nice and special but sometimes when he would caress my chest and breasts, I feel so gross and dirty and it—it disgusts me because it reminds me of when Carl used to do it, and I'll just pull away and it stops after that and we can't go on because it is just so gross.

[Defense Counsel]: Okay, Your Honor, we're renewing our objection to the relevancy objection now.

[The Court]: Overruled.

[Prosecutor]: [S.D.], has it been hard for you to come back and go through all this?

[S.D.]: Yes. Oh, my God, yes.

[Defense Counsel]: May the record reflect, and with the court reporter here, that the defendant has been—the witness has been sobbing for the last five minutes, these last few minutes.

Martin argues that S.D.'s state of mind two years later is not relevant and that the testimony presented was victim-impact material more suited for the punishment phase of the trial. The State responds that S.D.'s state of mind at the time of the offenses is statutorily relevant pursuant to article 38.37 and that the trial court did not err by admitting the evidence because the evidence shows the pain and disgust experienced by S.D. when Martin touched her breasts.

### A. Standard of Review

 We review the trial court's decision to admit or exclude evidence under

an abuse of discretion standard. *Burden v. State,* 55 S.W.3d 608, 615 (Tex.Crim. App.2001); *Green v. State,* 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996), *cert. denied,* 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997); *Montgomery,* 810 S.W.2d at 379–80. The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse. *Montgomery,* 810 S.W.2d at 391. We will not reverse a trial court's ruling on the admission of evidence as long as the ruling is within the zone of reasonable disagreement. *Id.*

**B. Analysis**

■■■ Victim-impact testimony is generally irrelevant at guilt-innocence because it does not tend to make more or less probable the existence of any fact of consequence at guilt-innocence. *See Miller–El v. State,* 782 S.W.2d 892, 895 (Tex. Crim.App.1990); *see also Stavinoha v. State,* 808 S.W.2d 76, 78 (Tex.Crim.App. 1991). Outside of the context of homicide cases, victim-impact evidence is generally defined as evidence regarding "the physical or psychological effect of the crime on the victims themselves." *Lane v. State,* 822 S.W.2d 35, 41 (Tex.Crim.App.1991), *cert. denied,* 504 U.S. 920, 112 S.Ct. 1968, 118 L.Ed.2d 568 (1992). Clearly S.D.'s testimony here, regarding the impact of her memories of the crime on her relationship with her fiancé some two years later, qualifies as victim-impact testimony. We find the State's argument that the evidence was statutorily relevant because it shows the pain and disgust of S.D. at the time of the offense, some two years prior,

unpersuasive. We hold that the trial court abused its discretion by admitting S.D.'s victim-impact testimony during the guilt-innocence phase of the trial.

**C. Harm Analysis**

■■■ Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment. TEX.R.APP. P. 44.2. A trial court's failure to sustain a proper evidentiary objection does not rise to the level of constitutional error. *Johnson,* 967 S.W.2d at 417. Thus, we are to disregard the error unless it affected Martin's substantial rights. TEX.R.APP. P. 44.2(b).

As previously discussed, the record reflects there to be ample evidence of Martin's guilt. Further, we find nothing in the record to indicate that the State emphasized the testimony; in fact, we note that the State did not even mention the objected-to testimony in its closing. We conclude that in the context of the entire case against Martin, the trial court's error in admitting the testimony in question did not have a substantial or injurious effect on the jury's verdict and did not affect Martin's substantial rights. *See King,* 953 S.W.2d at 271. Thus, we disregard the error. *See* TEX.R.APP. P. 44.2(b). We overrule Martin's sixth issue.

**VIII. Bond Amount**

In his seventh issue, Martin argues that the trial court abused its discretion by increasing his bond to $100,000 for being five minutes late on the second day of trial. The State responds that the trial court did not abuse its discretion in raising Martin's bond because Martin failed to timely appear for court, the charges against him were very serious, and he was facing the possibility of a lengthy prison sentence. The State also argues that Martin waived

any error by failing to specify in his brief where error can be found in the record. *See* Tex.R.App. P. 33.1.

## A. Inadequate briefing

█ If a party does not refer the appellate court to the precise pages in the record where the error allegedly occurred, the appellate court may properly overrule the issue as inadequately briefed. *Lawton v. State*, 913 S.W.2d 542, 554 (Tex.Crim. App.1995), *cert. denied*, 519 U.S. 826, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996); *Alvarado v. State*, 912 S.W.2d 199, 210 (Tex.Crim. App.1995). Here, although Martin does not tell us precisely where error occurred in the record, he does indicate that error occurred on the second day of trial when the trial court raised his bond. Accordingly, we will address Martin's seventh issue.

## B. Analysis

█ The record reflects that Martin's pretrial bail was set at $25,000, that he was five to ten minutes late to court on the second day of trial, and that as a result of his failure to timely appear, the trial court increased his bail to $100,000. Shortly thereafter, the record reflects that Martin presented to the trial court the reason for his tardiness, indicating that no disrespect was intended and that he was not going anywhere. Martin did not, however, lodge any objection to the trial court's action or complain that the amount of bail was excessive.

█ To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex.R.App. P. 33.1(a)(1); *Mosley*, 983 S.W.2d at 265. Further, the trial court must have ruled on the request, objection, or motion, either expressly or im-

plicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex.R.App. P. 33.1(a)(2); *Mendez*, 138 S.W.3d at 341. Preservation of error is a systemic requirement that this court should review on its own motion. *Martinez v. State*, 22 S.W.3d 504, 507 n. 7 (Tex.Crim.App.2000); *Hughes v. State*, 878 S.W.2d 142, 151 (Tex.Crim.App.1993) (op. on reh'g), *cert. denied*, 511 U.S. 1152, 114 S.Ct. 2184, 128 L.Ed.2d 902 (1994).

█ Here, although Martin explained the reason for his tardiness to the trial court, he did not object to the trial court's action or complain to the trial court that the amount of his increased bail was excessive. Therefore, we conclude that Martin failed to preserve for our review any complaint that the trial court abused its discretion when it increased the amount of his bond. Tex.R.App. P. 33.1; *see also Margoitta v. State*, 994 S.W.2d 336, 338–39 (Tex.App.-Waco, no pet.) (holding appellant waived complaint on appeal by failing to inform trial court that he viewed the amount of bail pending appeal to be excessive). Further, even if we assume that Martin preserved error, we cannot say that the trial court abused its discretion by increasing Martin's bond because, under the circumstances of this case, we believe that the trial court could have reasonably determined that Martin posed a flight risk. *See* Tex.Code Crim. Proc. Ann. art. 17.09, § 3 (Vernon 2005) (providing that if the trial judge or magistrate "finds that the bond is defective, excessive[,] or insufficient in amount, or that the sureties, if any, are not acceptable, or for any other good and sufficient cause, such judge or magistrate may ... require the accused to give another bond in such amount as the judge or magistrate may deem appropriate"); *see also id.* art. 17.15 (setting forth the rules for fixing the amount of bail); *see also In re Hulin*, 31 S.W.3d 754, 760 (Tex.

App.-Houston [1st Dist.] 2000, no pet.) (indicating the likelihood of a lengthy prison sentence is a factor to be considered in determining the amount of pretrial bond sufficient to secure the presence of the accused at trial); *Ex parte Scott,* 122 S.W.3d 866, 869 (Tex.App.-Fort Worth, 2003, no pet.) (setting forth factors to be considered in establishing defendant's bond); *but see Meador v. State,* 780 S.W.2d 836, 837 (Tex.App.-Houston [14th Dist.] 1989, no pet.) (holding trial court abused its discretion by revoking appellant's bond of $100,000 and increasing the amount of bond required to $200,000 because appellant was three to five minutes late to court and appeared without his attorney). We overrule Martin's seventh issue.

## IX. The Request for a Specific Limiting Instruction

In his eighth issue, Martin argues that the trial court abused its discretion by refusing to give a specific limiting instruction to the jury, either during trial or in the jury charge, instructing the jury that they could not consider evidence of Martin's touching of S.D.'s breast before age twelve because such evidence is extraneous offense evidence. The State responds that although the trial court refused to include the specific instruction requested by Martin, the trial court did not err because the trial court included in the jury charge a limiting instruction, albeit not the specific instruction requested by Martin.

### A. The Requirement for a Contemporaneous Limiting Instruction

Upon request, a trial court must immediately give a limiting instruc-

tion regarding evidence that is admitted for a limited purpose. *See* TEX.R. EVID. 105(a); *Hammock,* 46 S.W.3d at 894. Because evidence of extraneous acts is admissible for some purposes but inadmissible for others, on request, the accused is entitled to a midtrial limiting instruction on extraneous offense evidence. *Rankin,* 974 S.W.2d at 711–12.

Here, the record reflects that the State presented evidence regarding two breast touching incidents, one when S.D. was eleven years old and one when she was in the ninth grade. At the time of the State's presentation of the second incident of breast touching, Martin objected that he had not been properly noticed regarding any extraneous offenses of breast touching. The trial court overruled the objection.[8] At the end of the State's case-in-chief, the State elected to go to the jury on the second breast touching incident. Martin objected that the State's election made the breast touching at age eleven an extraneous offense for which he received no notice. Martin then requested a special contemporaneous limiting instruction be given to the jury informing them that they could not consider the evidence of touching around age eleven, if any, as evidence of guilt. The trial court denied his request, indicating that a limiting instruction would be given in the jury charge. In situations such as this, a defendant is entitled to have a limiting instruction given to the jury as to the remaining or extraneous incidents. *See Crawford v. State,* 696 S.W.2d 903, 905–06 (Tex.Crim.App.1985). We hold, therefore, that the trial court erred by failing to give a contemporaneous limiting instruction.[9]

---

8. Martin does not argue that the trial court committed reversible error by admitting S.D.'s testimony of breast touching at age eleven without proper *notice* from the State of

an extraneous offense of breast touching. Accordingly, we do not address that issue.

9. This is not to say that Martin was entitled to the special instruction requested, just that the

## B. Harm Analysis

We now consider whether the trial court's error is reversible. Tex.R.App. P. 44.2(b). As previously discussed, the erroneous admission of an extraneous offense does not constitute constitutional error. *See Avila,* 18 S.W.3d at 741–42. Thus, we are to disregard the error unless it affected Martin's substantial rights. Tex.R.App. P. 44.2(b).

Once again, we note that the record reflects ample evidence of Martin's guilt. Further, the record reflects that the trial court included a limiting instruction in the jury charge. Absent evidence to the contrary, the jury is presumed to follow the instructions set forth in the trial court's charge. *Hutch,* 922 S.W.2d at 172. Martin has not rebutted this presumption. We conclude therefore that, in the context of the entire case against Martin, the trial court's error in admitting the testimony in question did not have a substantial or injurious effect on the jury's verdict and did not affect Martin's substantial rights. *See King,* 953 S.W.2d at 271. Thus, we disregard the error. *See* Tex.R.App. P. 44.2(b).

## C. The Request for a Specific Instruction in the Jury Charge

The record reflects that Martin requested the following charge be read to the jury: "You may not consider for any purposes testimony alleging that the defendant committed an offense by touching the breasts of [S.D.] at any time before her age 12." The trial court denied Martin's request for a specific instruction but instead instructed the jury in the charge as follows:

> You are instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense al-

leged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the intent of the defendant, if any, the state of mind of the defendant and the child, and the previous and subsequent relationship between the defendant and the child in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

Martin contends on appeal that the trial court erred by not providing the jury with the specific instruction requested. In that regard, Martin argues that he was entitled to the specific limiting instruction because the alleged breast touching at age eleven was so remote in time from the alleged breast touching during the ninth grade that it probably was not even relevant and of little if any probative value. Under these circumstances, Martin argues that he was entitled to the specific instruction. Martin does not cite us any authority for such a proposition. Nor has he told us how he was harmed by the trial court's failure to give the specific instruction requested. Consequently, we overrule Martin's eighth issue to the extent he argues that the trial court erred by failing to give the specific instruction requested.

## X. Conclusion

Because of our disposition of Martin's eight issues on appeal, we affirm the trial court's judgment.

---

trial court erred by failing to give a proper contemporaneous limiting instruction.