

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00189-CR

| | | |
|---|---|---|
| Donald David Hetherington | § | From the 297th District Court |
| | § | of Tarrant County (1140609D) |
| v. | § | January 17, 2013 |
| | § | Opinion by Justice Gabriel |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment.  It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By_____
Justice Lee Gabriel



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00189-CR

DONALD DAVID HETHERINGTON                                      APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

### FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Donald David Hetherington appeals his conviction for sexual assault of a child, arguing in three points that his lawyer was ineffective and that the trial court abused its discretion by admitting extraneous-offense evidence and by issuing a limiting instruction of insufficient scope.  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Background Facts and Procedural History

As she walked past the living room, the complainant's mother (Mom) saw Appellant's face buried in her sixteen-year-old son's lap. Appellant held very still as Mom gestured for her son to pull up his pants and follow her to the bedroom, where she ushered him into a closet, told him to stay put, and called the police. She then went back and confronted Appellant. He apologized as she screamed at him and escorted him from the house at gunpoint. Appellant was later arrested and tried for sexual assault of a child.

At trial, a witness for the State testified that, approximately twenty-two years before, Appellant had committed similar misconduct against him when the witness was twelve years old.

The jury found Appellant guilty and assessed his punishment at ten years' confinement. The trial court sentenced Appellant accordingly.

## Extraneous-Offense Evidence

In his first point, Appellant claims that the trial court erred by admitting the prior misconduct evidence during guilt-innocence and that the erroneous admission caused him harm. Appellant bases his claim on rules of evidence 404(b) and 403. *See* Tex. R. Evid. 403, 404(b).

The standard of review is abuse of discretion, which means that we must affirm the trial court's ruling if it is within the zone of reasonable disagreement. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009);

*Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

The State contends that (1) evidence that Appellant had once before molested a child was admissible under rule 404(b) because Appellant opened the door and (2) the trial court properly balanced the probative value of the evidence against its potential for unfair prejudice under rule 403. The State claims that Appellant pushed against the door first during his portion of voir dire, when his lawyer discussed witness credibility with the venire. One panel member ("A") had suggested that a witness might color his or her testimony one way or another depending on how the witness perceived the "payoff" to that testimony. He offered the example of a police-brutality case in which he surmised that he would discount testimony from the officer's partner if he thought the witness was reluctant to impugn his partner. Appellant's counsel followed A's input with the following:

> [DEFENSE COUNSEL]: Thank you. And I think a lot of what Mr. [A] was talking about was motive to, maybe, tell an untruth.
>
> Mr. [B], have you ever seen those billboards going down the road that say[ ]: Noteboom, we sue sex offenders?
>
> VENIREPERSON [B]: Yes.
>
> [DEFENSE COUNSEL]: Okay. Now, what kind of case would that be if you were suing somebody or you were accused of in a civil case? What kind of burden going back?
>
> VENIREPERSON [B]: The burden would be—
>
> [DEFENSE COUNSEL]: Preponderance of the evidence.

4

VENIREPERSON [B]:  Exactly.

[DEFENSE COUNSEL]:  That it probably happened.  Okay? But if you're able to show that it probably happened, in a civil case, you get that payoff that Mr. [A] was talking about.  Wouldn't you agree?

VENIREPERSON [A]:  Yes.

[DEFENSE COUNSEL]:  Okay.  So could that be a reason, when judging someone's credibility, that you might want to be a little concerned about what they're telling you like Mr. [A] was talking about?

Appellant's counsel revisited this issue with Mom on cross-examination when he asked her whether she had contacted a law firm about filing suit:

Q  (By [DEFENSE COUNSEL])  [Mom], after—after this alleged incident, did you ever contact a law firm regarding filing a civil suit regarding this incident?

A      Did I?  No, sir, I did not.

Q      Okay.  Did anyone in your family ever contact a law firm regarding filing a civil suit?

A      No.

The prosecutor asked for a bench conference to flesh out Appellant's purpose in pursuing this line of questioning:

[PROSECUTOR]:  Your Honor, I just wanted to make it clear on the record.  Is there some specific matter that they're admitting?  I want to see if I have an objection, and I don't know what their theory is so I don't know whether I have one.

[DEFENSE COUNSEL]:  Well, obviously, Your Honor, if there is any other motivation to bring this case, then I think—you know, monetary issues or pecuniary interests, I think that's definitely a theory that we should be able to explore.

5

[PROSECUTOR]: Is the Defense suggesting that it would be admissible under the theory of the motive here being—

[DEFENSE COUNSEL]: Bias or motive to testify.

[PROSECUTOR]: —greed or desire for money? Is that—

[DEFENSE COUNSEL]: I mean, if you want to phrase it like that, that's fine. I think I've—

[PROSECUTOR]: Am I being accurate though? That's what I'm asking.

[DEFENSE COUNSEL]: That's not an incorrect way to phrase it.

[PROSECUTOR]: Okay. I just wanted to make clear.

Appellant continued Mom's cross-examination as follows:

Q     (By [DEFENSE COUNSEL]) Okay. [Mom], you understand that you are under oath and that you—you swore an oath to the Court to tell the truth—

A     That's correct.

. . . . .

Q     Okay. Are you familiar with the Noteboom Firm?

A     Yes, I am.

Q     Okay. And is it your testimony today that you, or anyone connected to you, has never contacted the Noteboom Firm regarding this particular incident?

A     No. I disagree with that.

Q     You disagree with what?

A     That somebody connected to me did, but that was not the question the first time you asked me.

6

Q      Okay.  Did someone connected to you or your family contact the Noteboom Firm on your behalf?

A      Yes.

Q      Okay.  Who was that?

A      Thomas Stephens.

Q      Okay.  And who is Thomas Stephens?  How is he related to you?

A      He's a lawyer out of Houston.

Q      Okay.  How did you––did you contact––did you reach out to Mr. Stephens?

A      Yes, because he was a friend.

. . . . .

Q      Okay.  Did you––did you contact him regarding the possibility of bringing a civil suit?

A      No, I did not.

Q      . . . . [D]o you know what . . . particular law Mr. Stephens practices?

A      Real estate.

. . . . .

Q      Did you believe that you possibly needed legal representation in this matter?

A      Yes.

Q      Okay.  Why would that be?

A      Because I didn't know what else to do so––I mean, this was a serious matter.

Q       Okay.  And did you and Mr. Stephens—did you—did you even discuss the possibility of filing a civil suit against [Appellant]?

A       No.

Q       You never discussed it?

A       I mean, I didn't discuss it with him, no.

Q       Okay.  Did he ever discuss it with you?

A       No.

Q       All right.  How—how is that you know that he contacted the Noteboom Firm?

A       Because he told me that there was lawyers here who dealt with this kind of situation and that Noteboom was one of a well-renowned law office here in our town.

Q       Okay.  So did he—so how many conversations did you have with Mr. Stephens regarding this?

A       I don't know how many.  It wasn't many.  I mean, I talked to him a couple of times.

Q       And so I'm just going to assume the second time that you guys talked he told you that he contacted the Noteboom Firm on your behalf?

A       With them, yes.

Q       Okay.  And then what did y'all discuss?

A       We really didn't discuss anything, other than him—or, I'm sorry, that he could fly in and, you know, stand by my side and do the talking for me because I'm illiterate to what lawyers do and what y'all talk about and—

Appellant's counsel then asked Mom questions about whether she had

invited Appellant to spend the night at their home, knowing that he regularly

8

carried large amounts of cash and wore lots of jewelry, and whether she had had trouble paying her bills and supporting her three children. He then asked her about another lawsuit, and when that question drew a relevancy objection, he stated in front of the jury that he was entitled "to explore the fact that she may be a litigious witness."

Given the record before us, we hold that it was within the zone of reasonable disagreement for the trial court to conclude that evidence about Appellant's prior misconduct with another teenager had relevancy apart from character conformity because counsel's questions exploring a civil lawsuit opened the door to evidence offered to rebut the implication that Mom had induced her son to fabricate charges against Appellant in order to create grounds for a lawsuit with a potential financial payoff. Accordingly, to the extent it is based on rule 404(b), we overrule Appellant's first point. *See Wheeler v. State*, 67 S.W.3d 879, 887–88 (Tex. Crim. App. 2002).

Having held that the extraneous-offense evidence was admissible under 404(b), we must decide whether it was within the trial court's discretion to conclude that its probative value was not substantially outweighed by the potential for unfair prejudice. *See* Tex. R. Evid. 403. In conducting a rule 403 analysis, we must balance the inherent probative force of the complained-of evidence together with the proponent's need for it against any tendency it had to suggest a decision on an improper basis, such as emotion, any tendency it had to confuse or distract the jury from the main issues, any possibility the jury might

9

have given it undue weight, and whether its presentation consumed an inordinate amount of time or merely repeated evidence that was already admitted. *See Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Logically, evidence that Appellant had previously molested a teenage boy in the same way as he was tried for in this case is inherently probative. *See Dennis v. State*, 178 S.W.3d 172, 179–80 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); 1 Steven Goode et al., *Texas Practice Series: Guide to the Texas Rules of Evidence* § 404.2 (3d ed. 2002) ("Evidence of character offered to prove conduct or a state of mind conforming to that character is logically relevant.") Further, the trial court reasonably could have concluded that the State's need for the evidence was substantial. As discussed above, Appellant raised questions about the credibility of the State's main witnesses, suggesting that Mom might have put her son up to bringing the charges in hopes of monetary gain. This suggestion, combined with the lack of physical evidence to corroborate Mom and her son's testimony, enhanced the State's need for evidence that Appellant had done the same thing to another boy in the past. We hold that these factors weigh in favor of admissibility.

On the other hand, logically, evidence of another sexual assault against a child in the past would tend to inflame a jury and suggest a decision based on emotion. *See Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd). This factor weighs against the trial court's decision.

10

But we do not think the evidence had any tendency to confuse or distract the jurors from the main issues, that they might have given it undue weight, or that its presentation consumed an inordinate amount of time or merely repeated evidence that was already admitted. *See Gigliobianco*, 210 S.W.3d at 641–42. As the State points out, the witness's testimony about the prior offense occupies very few pages of a 340-page record on guilt-innocence. This factor weighs in favor of admissibility.

In conclusion, we hold that the trial court's balancing under rule 403 was within the zone of reasonable disagreement and that the trial court did not, therefore, abuse its discretion by concluding that the danger of unfair prejudice did not substantially outweigh probative value. *See* Tex. R. Evid. 403; *Roberts v. State*, No. 02-10-00266-CR, 2011 WL 5607620, at \*5 (Tex. App.—Fort Worth Nov. 17, 2011, pet. ref'd) (mem. op., not designated for publication); *Dial v. State*, No. 05-09-00741-CR, 2010 WL 4705529, at \*5 (Tex. App.—Dallas Nov. 22, 2010, no pet.) (not designated for publication). Accordingly, we overrule the remainder of Appellant's first point.

### Limiting Instruction

In his second point, Appellant contends that the trial court violated rule of evidence 105(a) by giving a limiting instruction that did not restrict the extraneous-offense evidence to its proper scope.

The State responds that because the evidence was initially admitted without a limiting instruction, any error with regard to the scope of the limiting instruction was forfeited, and Appellant was not harmed.

Rule 105(a) of the rules of evidence provides in pertinent part that

[w]hen evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; but, in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal.

Tex. R. Evid. 105(a).

Citing *Williams v. State*, 273 S.W.3d 200, 230 (Tex. Crim. App. 2008); *Hammock v. State*, 46 S.W.3d 889, 892–95 (Tex. Crim. App. 2001); and *Martin v. State*, 176 S.W.3d 887, 898–99 (Tex. App.—Fort Worth 2005, no pet.), the State argues that the trial court did not give a limiting instruction at the time the extraneous offense was admitted but waited until immediately after the witness testified. We do not read the cases cited by the State to require that a limiting instruction must be given *before* testimony if a defendant desires the testimony to be given limited consideration; rather the cases simply instruct that a defendant's failure to request a limiting instruction *at the time evidence is presented* renders the evidence admissible for all purposes and relieves the trial judge of any obligation to include a limiting instruction in the jury charge. *See Williams*, 273 S.W.3d at 230; *Hammock*, 46 S.W.3d at 892–95; *Martin*, 176 S.W.3d at 899.

12

Our review of the record shows that Appellant requested a limiting instruction before the witness testified about the extraneous offense and that the trial court gave one immediately on the heels of the complained-of testimony. Accordingly, we disagree with the State that the evidence was admitted without a limiting instruction.

The State concedes that the limiting instruction the trial court gave was incorrect. Then, citing *Owen v. State*, Nos. 13-10-00417-CR, 13-10-00418-CR, 2011 WL 5515548 (Tex. App.—Corpus Christi Nov. 10, 2011, pet. ref'd) (mem. op., not designated for publication), and *Moore v. State*, 339 S.W.3d 365, 370–71 (Tex. App.—Amarillo 2011, pet. granted) (op. after remand), *aff'd as modified*, 371 S.W.3d 221 (Tex. Crim. App. 2012), the State contends that because Appellant did not object to the oral limiting instruction or to the written one given in the jury charge (of which Appellant does not complain in his brief) the question becomes whether Appellant suffered egregious harm.

Because Appellant failed to preserve a complaint that the trial court gave an erroneous limiting instruction during trial, we need not consider either the propriety of that instruction or whatever harm it may have caused. Those issues are not before us. As for the instruction that the trial court gave in the jury charge, however, we agree with the State that the remaining issue is whether the jury charge caused Appellant egregious harm.

We also agree with the State that Appellant has failed to demonstrate that the trial court's limiting instruction caused him egregious harm. The State points

13

to an unpublished case from the Austin Court of Appeals that examined the same issue presented here. In *Tobar v. State*, the district court had admitted extraneous offense evidence to rebut a claim of recent fabrication, but instead of limiting the evidence to that purpose, it had instructed the jury to restrict the evidence to the purposes set out in rule 404(b), that is, motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. No. 03-05-00521-CR, 2006 WL 1649010, at *3 (Tex. App.—Austin June 16, 2006, no pet.) (mem. op., not designated for publication); *see* Tex. R. Evid. 404(b). Because the instruction the trial court gave in *Tobar* prohibited the jury's consideration of the evidence for any reason other than those specifically identified, and because it did not identify rebutting a claim of recent fabrication as one of the reasons for consideration, the court of appeals held that the instruction given actually accrued to the appellant's benefit. *Tobar*, 2006 WL 1649010, at *6. Consequently, that court held that the instruction could not have caused the appellant any harm, let alone egregious harm. *Id.*

Here, the trial court instructed the jury, immediately after the witness testified and in its charge on guilt-innocence, to consider the extraneous-offense testimony "only . . . in determining the motive, opportunity, intent, plan and knowledge of the defendant in relation to the offense on trial and . . . not . . . for any other purpose." Because the instruction set out an exclusive list of the purposes for which the jury could consider the extraneous-offense testimony and because that list did not include considering the evidence to rebut a claim of

14

fabrication, the jury was not allowed to consider the evidence for that purpose. Because the instruction prohibited the jury from using the evidence to rebut Appellant's implication that the charges had been fabricated to form the basis of a civil lawsuit, the implication was not rebutted. Therefore, the instruction helped Appellant rather than harmed him. Accordingly, we overrule Appellant's second point.

**Trial Strategy**

In his third point, Appellant faults his trial attorney for employing a strategy that permitted the State to offer and have admitted the extraneous-offense evidence of which Appellant complains in his first point. To establish ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009). In other words, for a claim of ineffective assistance of counsel to succeed, the record must demonstrate both deficient performance by counsel and prejudice suffered by the defendant. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). An ineffective-assistance claim must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Id.* (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)).

15

In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)). If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been grounded in legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective-assistance claim on direct appeal. *Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007); *Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002), *cert. denied*, 538 U.S. 998 (2003).

We note that although Appellant filed a motion for new trial, in it he did not challenge the effectiveness of his trial counsel. We also note that there is no record that the motion for new trial was presented to the trial court or that the trial court conducted a hearing on it.

Moreover, Appellant does not dispute that his trial counsel engaged in a strategy and that his strategy was to cast doubt on Mom's (and by extension, the complainant's) credibility; he contends, however, that counsel's strategy was outrageous and one that no reasonably professional attorney would have pursued. But a strategy is not outrageous simply because it fails. *See Flores v. State*, 18 S.W.3d 796, 800 (Tex. App.—Austin 2000, no pet.). Here, counsel could have calculated that the risk of his opening the door to a fairly remote extraneous offense was slightly outweighed by the payoff of having the jury wonder whether Mom might have put her son up to bringing charges against Appellant who, particularly because he had a prior offense, was vulnerable to charges of sexual assault. In any event, we refuse to second guess counsel's trial strategy simply because it failed to result in an acquittal for his client. *See id.* Accordingly, on the record presented here, we cannot say that Appellant received ineffective assistance, and we overrule Appellant's third point. *See Salinas,* 163 S.W.3d at 740; *Thompson,* 9 S.W.3d at 813.

**Conclusion**

Having overruled all of Appellant's points on appeal, we affirm the judgment of the trial court.

LEE GABRIEL
JUSTICE

PANEL: DAUPHINOT, WALKER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 17, 2013