02-11-189-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00189-CR

 

 


 
 
 Donald
 David Hetherington
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 297th District
 Court
  
 of
 Tarrant County (1140609D)
  
 January
 17, 2013
  
 Opinion
 by Justice Gabriel
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed. 

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

   
Justice Lee Gabriel

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00189-CR


 
 
 Donald David Hetherington
 
 
  
 
 
 APPELLANT
 
 
 
 
 V.
  
 
 
 
 
 The
 State of Texas
 
 
  
 
 
 STATE
 
 


----------

FROM THE 297th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Introduction

          Appellant
Donald David Hetherington appeals his conviction for sexual assault of a child,
arguing in three points that his lawyer was ineffective and that the trial
court abused its discretion by admitting extraneous-offense evidence and by issuing
a limiting instruction of insufficient scope.  We affirm.

Background
Facts and Procedural History

          As
she walked past the living room, the complainant’s mother (Mom) saw Appellant’s
face buried in her sixteen-year-old son’s lap.  Appellant held very still as Mom
gestured for her son to pull up his pants and follow her to the bedroom, where she
ushered him into a closet, told him to stay put, and called the police.  She
then went back and confronted Appellant.  He apologized as she screamed at him
and escorted him from the house at gunpoint.  Appellant was later arrested and
tried for sexual assault of a child.

          At
trial, a witness for the State testified that, approximately twenty-two years
before, Appellant had committed similar misconduct against him when the witness
was twelve years old.

          The
jury found Appellant guilty and assessed his punishment at ten years’ confinement.
 The trial court sentenced Appellant accordingly.

Extraneous-Offense
Evidence

          In
his first point, Appellant claims that the trial court erred by admitting the
prior misconduct evidence during guilt-innocence and that the erroneous admission
caused him harm.  Appellant bases his claim on rules of evidence 404(b) and
403.  See Tex. R. Evid. 403, 404(b).

          The
standard of review is abuse of discretion, which means that we must affirm the
trial court’s ruling if it is within the zone of reasonable disagreement.  De
La Paz v. State, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009); Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh’g).

          The
State contends that (1) evidence that Appellant had once before molested a
child was admissible under rule 404(b) because Appellant opened the door and (2)
the trial court properly balanced the probative value of the evidence against its
potential for unfair prejudice under rule 403.  The State claims that Appellant
pushed against the door first during his portion of voir dire, when his lawyer discussed
witness credibility with the venire.  One panel member (“A”) had suggested that
a witness might color his or her testimony one way or another depending on how
the witness perceived the “payoff” to that testimony.  He offered the example of
a police-brutality case in which he surmised that he would discount testimony
from the officer’s partner if he thought the witness was reluctant to impugn
his partner.  Appellant’s counsel followed A’s input with the following:

          [DEFENSE
COUNSEL]:  Thank you.  And I think a lot of what Mr. [A] was talking about was
motive to, maybe, tell an untruth.

 

          Mr. [B],
have you ever seen those billboards going down the road that say[ ]:  Noteboom,
we sue sex offenders?

 

          VENIREPERSON
[B]:  Yes.

 

          [DEFENSE
COUNSEL]:  Okay.  Now, what kind of case would that be if you were suing
somebody or you were accused of in a civil case?  What kind of burden going
back?

 

          VENIREPERSON
[B]:  The burden would be––

 

          [DEFENSE
COUNSEL]:  Preponderance of the evidence.

 

          VENIREPERSON
[B]:  Exactly.

 

          [DEFENSE
COUNSEL]:  That it probably happened.  Okay?  But if you’re able to show that
it probably happened, in a civil case, you get that payoff that Mr. [A] was
talking about.  Wouldn’t you agree?

 

          VENIREPERSON
[A]:  Yes.

 

          [DEFENSE COUNSEL]:  Okay.  So could that be a
reason, when judging someone’s credibility, that you might want to be a little
concerned about what they’re telling you like Mr. [A] was talking about?

          Appellant’s
counsel revisited this issue with Mom on cross-examination when he asked her whether
she had contacted a law firm about filing suit:

Q  (By [DEFENSE
COUNSEL])  [Mom], after––after this alleged incident, did you ever contact a
law firm regarding filing a civil suit regarding this incident?

 

A       Did I?  No,
sir, I did not.

 

Q       Okay.  Did
anyone in your family ever contact a law firm regarding filing a civil suit?

 

A       No.

 

          The
prosecutor asked for a bench conference to flesh out Appellant’s purpose in
pursuing this line of questioning:

          [PROSECUTOR]: 
Your Honor, I just wanted to make it clear on the record.  Is there some
specific matter that they’re admitting?  I want to see if I have an objection,
and I don’t know what their theory is so I don’t know whether I have one.

 

          [DEFENSE
COUNSEL]:  Well, obviously, Your Honor, if there is any other motivation to
bring this case, then I think––you know, monetary issues or pecuniary
interests, I think that’s definitely a theory that we should be able to
explore.

 

          [PROSECUTOR]: 
Is the Defense suggesting that it would be admissible under the theory of the
motive here being––

 

          [DEFENSE
COUNSEL]:  Bias or motive to testify.

 

          [PROSECUTOR]: 
––greed or desire for money?  Is that––

 

          [DEFENSE
COUNSEL]:  I mean, if you want to phrase it like that, that’s fine.  I think
I’ve––

 

          [PROSECUTOR]: 
Am I being accurate though?  That’s what I’m asking.

 

          [DEFENSE
COUNSEL]:  That’s not an incorrect way to phrase it.

 

          [PROSECUTOR]:  Okay.  I just wanted to make
clear.

          Appellant
continued Mom’s cross-examination as follows:

Q       (By [DEFENSE
COUNSEL])  Okay.  [Mom], you understand that you are under oath and that you––you
swore an oath to the Court to tell the truth––

 

A       That’s
correct.

 

. . . . .

 

Q       Okay.  Are
you familiar with the Noteboom Firm?

 

A       Yes, I am.

 

Q       Okay.  And is
it your testimony today that you, or anyone connected to you, has never
contacted the Noteboom Firm regarding this particular incident?

 

A       No.  I
disagree with that.

 

Q       You disagree
with what?

 

A       That somebody
connected to me did, but that was not the question the first time you asked me.

 

Q       Okay.  Did
someone connected to you or your family contact the Noteboom Firm on your
behalf?

 

A       Yes.

 

Q       Okay.  Who
was that?

 

A       Thomas
Stephens.

 

Q       Okay.  And
who is Thomas Stephens?  How is he related to you?

 

A       He’s a lawyer
out of Houston.

 

Q       Okay.  How
did you––did you contact––did you reach out to Mr. Stephens?

 

A       Yes, because
he was a friend.

 

. . . . . 

 

Q       Okay.  Did
you––did you contact him regarding the possibility of bringing a civil suit?

 

A       No, I did
not.

 

Q       . . . . [D]o
you know what . . . particular law Mr. Stephens practices?

 

A       Real estate.

 

. . . . . 

 

Q       Did you believe
that you possibly needed legal representation in this matter?

 

A       Yes.

 

Q       Okay.  Why
would that be?

 

A       Because I
didn’t know what else to do so––I mean, this was a serious matter.

 

Q       Okay.  And
did you and Mr. Stephens––did you––did you even discuss the possibility of
filing a civil suit against [Appellant]?

 

A       No.

 

Q       You never
discussed it?

 

A       I mean, I
didn’t discuss it with him, no.

 

Q       Okay.  Did he
ever discuss it with you?

 

A       No.

 

Q       All right. 
How––how is that you know that he contacted the Noteboom Firm?

 

A       Because he
told me that there was lawyers here who dealt with this kind of situation and
that Noteboom was one of a well-renowned law office here in our town.

 

Q       Okay.  So did
he––so how many conversations did you have with Mr. Stephens regarding this?

 

A       I don’t know
how many.  It wasn’t many.  I mean, I talked to him a couple of times.

 

Q       And so I’m
just going to assume the second time that you guys talked he told you that he
contacted the Noteboom Firm on your behalf?

 

A       With them,
yes.

 

Q       Okay.  And
then what did y’all discuss?

 

A       We really didn’t discuss anything, other than
him––or, I’m sorry, that he could fly in and, you know, stand by my side and do
the talking for me because I’m illiterate to what lawyers do and what y’all
talk about and––

          Appellant’s
counsel then asked Mom questions about whether she had invited Appellant to
spend the night at their home, knowing that he regularly carried large amounts
of cash and wore lots of jewelry, and whether she had had trouble paying her
bills and supporting her three children.  He then asked her about another
lawsuit, and when that question drew a relevancy objection, he stated in front
of the jury that he was entitled “to explore the fact that she may be a
litigious witness.”

          Given
the record before us, we hold that it was within the zone of reasonable
disagreement for the trial court to conclude that evidence about Appellant’s
prior misconduct with another teenager had relevancy apart from character
conformity because counsel’s questions exploring a civil lawsuit opened the
door to evidence offered to rebut the implication that Mom had induced her son
to fabricate charges against Appellant in order to create grounds for a lawsuit
with a potential financial payoff.  Accordingly, to the extent it is based on
rule 404(b), we overrule Appellant’s first point.  See Wheeler v. State,
67 S.W.3d 879, 887–88 (Tex. Crim. App. 2002).

          Having
held that the extraneous-offense evidence was admissible under 404(b), we must
decide whether it was within the trial court’s discretion to conclude that its probative
value was not substantially outweighed by the potential for unfair prejudice.  See
Tex. R. Evid. 403.  In conducting a rule 403 analysis, we must balance the
inherent probative force of the complained-of evidence together with the
proponent’s need for it against any tendency it had to suggest a decision on an
improper basis, such as emotion, any tendency it had to confuse or distract the
jury from the main issues, any possibility the jury might have given it undue
weight, and whether its presentation consumed an inordinate amount of time or
merely repeated evidence that was already admitted.  See Gigliobianco v. State,
210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

          Logically,
evidence that Appellant had previously molested a teenage boy in the same way
as he was tried for in this case is inherently probative.  See Dennis v.
State, 178 S.W.3d 172, 179–80 (Tex. App.––Houston [1st Dist.] 2005, pet.
ref’d); 1 Steven Goode et al., Texas Practice Series:  Guide to the Texas
Rules of Evidence § 404.2 (3d ed. 2002) (“Evidence of character offered to
prove conduct or a state of mind conforming to that character is logically
relevant.”)  Further, the trial court reasonably could have concluded that the
State’s need for the evidence was substantial.  As discussed above, Appellant
raised questions about the credibility of the State’s main witnesses,
suggesting that Mom might have put her son up to bringing the charges in hopes
of monetary gain.  This suggestion, combined with the lack of physical evidence
to corroborate Mom and her son’s testimony, enhanced the State’s need for
evidence that Appellant had done the same thing to another boy in the past.  We
hold that these factors weigh in favor of admissibility.

          On
the other hand, logically, evidence of another sexual assault against a child
in the past would tend to inflame a jury and suggest a decision based on
emotion.  See Newton v. State, 301 S.W.3d 315, 320 (Tex. App.––Waco
2009, pet. ref’d).  This factor weighs against the trial court’s decision.

          But
we do not think the evidence had any tendency to confuse or distract the jurors
from the main issues, that they might have given it undue weight, or that its
presentation consumed an inordinate amount of time or merely repeated evidence
that was already admitted.  See Gigliobianco, 210 S.W.3d at 641–42.  As
the State points out, the witness’s testimony about the prior offense occupies very
few pages of a 340-page record on guilt-innocence.  This factor weighs in favor
of admissibility.

          In
conclusion, we hold that the trial court’s balancing under rule 403 was within
the zone of reasonable disagreement and that the trial court did not,
therefore, abuse its discretion by concluding that the danger of unfair
prejudice did not substantially outweigh probative value.  See Tex. R.
Evid. 403; Roberts v. State, No. 02-10-00266-CR, 2011 WL 5607620, at *5
(Tex. App.––Fort Worth Nov. 17, 2011, pet. ref’d) (mem. op., not designated for
publication); Dial v. State, No. 05-09-00741-CR, 2010 WL 4705529, at *5 (Tex.
App.––Dallas Nov. 22, 2010, no pet.) (not designated for publication).  Accordingly,
we overrule the remainder of Appellant’s first point.

Limiting
Instruction

          In
his second point, Appellant contends that the trial court violated rule of
evidence 105(a) by giving a limiting instruction that did not restrict the extraneous-offense
evidence to its proper scope.

          The
State responds that because the evidence was initially admitted without a
limiting instruction, any error with regard to the scope of the limiting
instruction was forfeited, and Appellant was not harmed.

          Rule
105(a) of the rules of evidence provides in pertinent part that

[w]hen evidence which is admissible . . . for one purpose
but not admissible . . .  for another purpose is admitted, the court, upon
request, shall restrict the evidence to its proper scope and instruct the jury
accordingly; but, in the absence of such request the court’s action in
admitting such evidence without limitation shall not be a ground for complaint
on appeal.

Tex.
R. Evid. 105(a).

          Citing
Williams v. State, 273 S.W.3d 200, 230 (Tex. Crim. App. 2008); Hammock
v. State, 46 S.W.3d 889, 892–95 (Tex. Crim. App. 2001); and Martin v.
State, 176 S.W.3d 887, 898–99 (Tex. App.––Fort Worth 2005, no pet.), the
State argues that the trial court did not give a limiting instruction at the
time the extraneous offense was admitted but waited until immediately after the
witness testified.  We do not read the cases cited by the State to require that
a limiting instruction must be given before testimony if a defendant desires
the testimony to be given limited consideration; rather the cases simply
instruct that a defendant’s failure to request a limiting instruction at the
time evidence is presented renders the evidence admissible for all purposes
and relieves the trial judge of any obligation to include a limiting
instruction in the jury charge.  See Williams, 273 S.W.3d at 230; Hammock,
46 S.W.3d at 892–95; Martin, 176 S.W.3d at 899.

          Our
review of the record shows that Appellant requested a limiting instruction before
the witness testified about the extraneous offense and that the trial court
gave one immediately on the heels of the complained-of testimony.  Accordingly,
we disagree with the State that the evidence was admitted without a limiting
instruction.

          The
State concedes that the limiting instruction the trial court gave was
incorrect.  Then, citing Owen v. State, Nos. 13-10-00417-CR,
13-10-00418-CR, 2011 WL 5515548 (Tex. App.––Corpus Christi Nov. 10, 2011, pet.
ref’d) (mem. op., not designated for publication), and Moore v. State,
339 S.W.3d 365, 370–71 (Tex. App.––Amarillo 2011, pet. granted) (op. after
remand), aff’d as modified, 371 S.W.3d 221 (Tex. Crim. App. 2012), the
State contends that because Appellant did not object to the oral limiting
instruction or to the written one given in the jury charge (of which Appellant
does not complain in his brief) the question becomes whether Appellant suffered
egregious harm.

          Because
Appellant failed to preserve a complaint that the trial court gave an erroneous
limiting instruction during trial, we need not consider either the propriety of
that instruction or whatever harm it may have caused.  Those issues are not
before us.  As for the instruction that the trial court gave in the jury
charge, however, we agree with the State that the remaining issue is whether
the jury charge caused Appellant egregious harm.

          We
also agree with the State that Appellant has failed to demonstrate that the
trial court’s limiting instruction caused him egregious harm.  The State points
to an unpublished case from the Austin Court of Appeals that examined the same
issue presented here.  In Tobar v. State, the district court had admitted
extraneous offense evidence to rebut a claim of recent fabrication, but instead
of limiting the evidence to that purpose, it had instructed the jury to
restrict the evidence to the purposes set out in rule 404(b), that is, motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident.  No. 03-05-00521-CR, 2006 WL 1649010, at *3 (Tex.
App.––Austin June 16, 2006, no pet.) (mem. op., not designated for
publication); see Tex. R. Evid. 404(b).  Because the instruction the
trial court gave in Tobar prohibited the jury’s consideration of the
evidence for any reason other than those specifically identified, and because
it did not identify rebutting a claim of recent fabrication as one of the
reasons for consideration, the court of appeals held that the instruction given
actually accrued to the appellant’s benefit.  Tobar, 2006 WL 1649010, at
*6.  Consequently, that court held that the instruction could not have caused
the appellant any harm, let alone egregious harm.  Id.

          Here,
the trial court instructed the jury, immediately after the witness testified
and in its charge on guilt-innocence, to consider the extraneous-offense
testimony “only . . . in determining the motive, opportunity, intent, plan and
knowledge of the defendant in relation to the offense on trial and . . . not .
. . for any other purpose.”  Because the instruction set out an exclusive list
of the purposes for which the jury could consider the extraneous-offense
testimony and because that list did not include considering the evidence to
rebut a claim of fabrication, the jury was not allowed to consider the evidence
for that purpose.  Because the instruction prohibited the jury from using the
evidence to rebut Appellant’s implication that the charges had been fabricated
to form the basis of a civil lawsuit, the implication was not rebutted.  Therefore,
the instruction helped Appellant rather than harmed him.  Accordingly, we
overrule Appellant’s second point.

Trial
Strategy

          In
his third point, Appellant faults his trial attorney for employing a strategy
that permitted the State to offer and have admitted the extraneous-offense evidence
of which Appellant complains in his first point.  To establish ineffective
assistance of counsel, the appellant must show by a preponderance of the
evidence that his counsel’s representation fell below the standard of
prevailing professional norms and that there is a reasonable probability that,
but for counsel’s deficiency, the result of the trial would have been
different.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct.
2052, 2064 (1984); Davis v. State, 278 S.W.3d 346, 352 (Tex. Crim. App.
2009).  In other words, for a claim of ineffective assistance of counsel to
succeed, the record must demonstrate both deficient performance by counsel and
prejudice suffered by the defendant.  Menefield v. State, 363 S.W.3d
591, 592 (Tex. Crim. App. 2012).  An ineffective-assistance claim must be
“firmly founded in the record” and “the record must affirmatively demonstrate”
the meritorious nature of the claim.  Id. (quoting Thompson v. State,
9 S.W.3d 808, 813 (Tex. Crim. App. 1999)).

          In
evaluating the effectiveness of counsel under the deficient-performance prong,
we look to the totality of the representation and the particular circumstances
of each case.  Thompson, 9 S.W.3d at 813.  The issue is whether
counsel’s assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland,
466 U.S. at 688–89, 104 S. Ct. at 2065.  Review of counsel’s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel’s conduct fell within a wide range of reasonable
representation.  Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App.
2005); Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

          Trial
counsel “should ordinarily be afforded an opportunity to explain his actions
before being denounced as ineffective.”  Menefield, 363 S.W.3d at 593
(quoting Rylander v. State, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)). 
If trial counsel is not given that opportunity, then the appellate court should
not find deficient performance unless the challenged conduct was “so outrageous
that no competent attorney would have engaged in it.”  Id. (quoting Garcia
v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).  If counsel’s reasons
for his conduct do not appear in the record and there is at least the
possibility that the conduct could have been grounded in legitimate trial strategy,
we will defer to counsel’s decisions and deny relief on an ineffective-assistance
claim on direct appeal.  Garza v. State, 213 S.W.3d 338, 348 (Tex. Crim.
App. 2007); Ortiz v. State, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002), cert.
denied, 538 U.S. 998 (2003).

          We
note that although Appellant filed a motion for new trial, in it he did not
challenge the effectiveness of his trial counsel.  We also note that there is
no record that the motion for new trial was presented to the trial court or
that the trial court conducted a hearing on it.

          Moreover,
Appellant does not dispute that his trial counsel engaged in a strategy and
that his strategy was to cast doubt on Mom’s (and by extension, the complainant’s)
credibility; he contends, however, that counsel’s strategy was outrageous and
one that no reasonably professional attorney would have pursued.  But a strategy
is not outrageous simply because it fails.  See Flores v. State, 18
S.W.3d 796, 800 (Tex. App.––Austin 2000, no pet.).  Here, counsel could have
calculated that the risk of his opening the door to a fairly remote extraneous
offense was slightly outweighed by the payoff of having the jury wonder whether
Mom might have put her son up to bringing charges against Appellant who,
particularly because he had a prior offense, was vulnerable to charges of
sexual assault.  In any event, we refuse to second guess counsel’s trial strategy
simply because it failed to result in an acquittal for his client.  See id. 
Accordingly, on the record presented here, we cannot say that Appellant
received ineffective assistance, and we overrule Appellant’s third point. See
Salinas, 163 S.W.3d at 740; Thompson, 9 S.W.3d at 813.

Conclusion

          Having
overruled all of Appellant’s points on appeal, we affirm the judgment of the
trial court.

 

 

LEE GABRIEL
JUSTICE

 

PANEL: 
DAUPHINOT,
WALKER, and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  January 17, 2013








 









[1]See Tex. R. App. P. 47.4.