**Opinion filed December 7, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00225-CR

_____

**ROGELIO IVAN CADENA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR54943**

## M E M O R A N D U M   O P I N I O N

Appellant, Rogelio Ivan Cadena, was indicted for the offenses of capital murder, murder, aggravated robbery, and attempted aggravated robbery. Appellant entered a plea of not guilty to each offense and the case proceeded to a jury trial. The jury acquitted Appellant of murder but convicted him of aggravated robbery. TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2019). The jury then assessed Appellant's punishment at twenty-two years' imprisonment in the Institutional

Division of the Texas Department of Criminal Justice and the trial court sentenced Appellant accordingly. The State subsequently moved to dismiss the capital murder and attempted aggravated robbery charges, which the trial court granted.

Appellant raises five issues on appeal: (1) the evidence is insufficient to support his conviction for aggravated robbery; (2) the trial court abused its discretion when it overruled Appellant's objection to the admission of State's Exhibit No. 4 (an excerpt from one of Appellant's recorded interviews with law enforcement); (3) the trial court erred when it assessed certain court costs against Appellant; (4) the evidence is insufficient to support the trial court's assessment of court-appointed attorney's fees against Appellant; and (5) the trial court erred when it prematurely assessed a time payment fee. We modify and affirm.

## I. *Factual Background*

On the night of the events in question, Appellant was "hot boxing" a friend's vehicle—that is, smoking marihuana in an enclosed vehicle—with several other people while parked outside of Appellant's home. Two of the people with Appellant, Larry West and Zaydan Hayes, arranged to meet with Robert Duncan, John Hayes (no relation to Zaydan), and Carlos Timis, to purchase marihuana from them. West and Zaydan went to the meeting location armed with handguns; West possessed a 9mm FN handgun and Zaydan possessed a .40 caliber Smith and Wesson. West told Appellant he was going to "hit a lick" and Appellant gave West a handgun. Appellant told investigators that he understood "hitting a lick" meant to steal marihuana and that West had done that a few times before. According to Appellant, West, and Zaydan, Appellant gave both West and Zaydan the handguns that they brought to the meetup. Appellant and Zayden testified that Appellant gave him the .40 caliber Smith and Wesson months before the aggravated robbery was committed, not that night.

2

At the meetup, West snatched the marihuana from Duncan; West and Zaydan then fled. Duncan pursued them. Zaydan testified that he heard gunfire as he fled and that he fired his weapon twice in the direction of the person he believed was chasing them. Duncan was struck by both shots. At this, Timis and John Hayes also fled; Duncan was left alone.

West and Zaydan returned to Appellant's home and relayed what had occurred. Appellant told investigators that he initially took both handguns from them and put the handguns in a secret compartment behind or inside of his bedroom dresser. The next day, Zaydan took the handguns from Appellant and buried the .40 caliber Smith and Wesson outside of another friend's home. The 9mm was later found in a backpack inside that same friend's home.

The next day, Duncan's mother reported that he was missing. Duncan's body was found two days later. According to Dr. Tasha Greenberg, the medical examiner who performed Duncan's autopsy, Duncan died as the result of gunshot wounds to his head and chest.

During the guilt-innocence phase of Appellant's trial, the State presented testimony from Silver Nichols, Duncan's mother, John Hayes, three law enforcement officers, and Dr. Greenberg. The State also offered forty-nine exhibits for admission, including Appellant's two recorded interviews with law enforcement. Appellant testified and presented the testimony of Zaydan, West, and two other friends who were at his home that night—Michaela Martinez and Arissa Ortega. The jury convicted Appellant of aggravated robbery but acquitted him of murder. This appeal followed.

## II. *Standards of Review*

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex.

App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all of the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Further, we treat direct and circumstantial evidence equally under this standard. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13). Therefore, in evaluating the

sufficiency of the evidence, we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13.

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will not reverse a trial court's decision to exclude evidence, and there is no abuse of discretion, unless that decision lies outside of the zone of reasonable disagreement. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018); *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). Furthermore, we will not disturb a trial court's evidentiary ruling, even if the trial court's reasoning was flawed, if it is correct on any theory of law that reasonably finds support in the record and is applicable to the case. *Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016); *De La Paz*, 279 S.W.3d at 344.

III. *Analysis*

A. *The Offense*

In his first issue, Appellant asserts that the evidence is insufficient to support his conviction for aggravated robbery.

Among other offenses, the indictment charged Appellant with aggravated robbery, alleging that, while in the course of committing theft and with the intent to obtain and maintain control of Duncan's property, he intentionally, knowingly, and recklessly caused bodily injury to Duncan by shooting him and that Appellant used or exhibited a deadly weapon, a firearm, during the commission of the offense. As relevant to this appeal, a person commits the offense of robbery if, in the course of

committing theft[1] and with the intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another. PENAL § 29.02(a)(1). A person commits aggravated robbery, and the offense becomes an aggravated first-degree felony, if that person causes serious bodily injury to another or uses or exhibits a deadly weapon during the commission of the robbery offense. *Id.* § 29.03(a)(1)(2). A firearm is a deadly weapon per se. *Id.* § 1.07(a)(17)(A) (West Supp. 2023).

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, the conduct of another for whom he is criminally responsible, or both. *Id.* § 7.01 (West 2021). A person is criminally responsible for an offense that is committed by the conduct of another if, acting with the intent to promote or assist in the commission of the offense, "he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2).

To determine whether an individual is a "party" to an offense, we look to "events [that occurred] before, during, and after the commission of the offense." *Wygal v. State*, 555 S.W.2d 465, 468–69 (Tex. Crim. App. 1977). We consider circumstantial evidence to determine "party" status. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994). However, there must be sufficient evidence of an understanding and common design to commit the offense. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Further, intent may be inferred from circumstantial evidence such as by the acts, words, and conduct of the accused. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995).

Appellant argues that West testified that he decided to steal the marihuana only after Duncan or John Hayes asked him to get into their vehicle at the meetup location. Zaydan also testified that he was unaware of a plan to rob Duncan and only

---

[1]Theft is the unlawful appropriation of property with the intent to deprive the owner of the property. PENAL § 31.03.

6

realized that West was robbing Duncan when West grabbed the marihuana and fled. And, at times, Appellant testified that West intended to purchase the marihuana from Duncan. Appellant asserts that there is no evidence that he encouraged, directed, or aided West in committing the robbery.

Appellant also argues that he gave West the 9mm handgun that night for protection. Appellant points out that the only shell casings recovered from the scene were from Zaydan's handgun, which Appellant had given to him at least a month beforehand.

Appellant testified that he knew West and Zaydan were going to "hit a lick," which he knew meant that they were intending to steal the marihuana from Duncan. He also stated during an interview with law enforcement that West had done that a few times. Appellant confirmed that he asked West if the people they were meeting had weapons and admitted that he had provided handguns to West and Zaydan before they went to the meetup where they planned to steal the marihuana.

After the robbery and murder of Duncan, West and Zaydan returned to Appellant's home and, rather than call the police, Appellant helped them hide the firearms they had used that night. When Appellant was questioned by law enforcement, he told them, falsely, that he was unaware of these events. He also omitted his involvement in concealing the murder weapon.

From this evidence, the jury could have reasonably inferred that Appellant understood that West and Zaydan intended to steal the marihuana and that he intended to aid them in the commission of the offense by providing West with a loaded firearm immediately prior to the robbery. Appellant's conduct after the robbery and murder of Duncan—concealing the handguns and providing false statements to law enforcement about the incident—also supports the reasonable inference that Appellant intended for the robbery to occur, and that he intended to assist in concealing the evidence (the handguns) to avoid prosecution.

7

In this case, as in all cases, the jury may believe all, some, or none of any witness's testimony. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Reyes v. State*, 465 S.W.3d 801, 805 (Tex. App.—Eastland 2015, pet. ref'd) (citing *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986)); *see Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. As the trier of fact, it is the jury's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 326; *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. Therefore, when the evidence supports conflicting inferences, we presume that the jury, as the factfinder, resolved any conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt*, 368 S.W.3d at 525–26; *Clayton*, 235 S.W.3d at 778.

We have reviewed the evidence in the light most favorable to the jury's verdict, and we hold that the record before us contains sufficient evidence from which a rational jury could have logically inferred and found beyond a reasonable doubt that Appellant was guilty of aggravated robbery under the law of parties. Therefore, because the jury could have found the elements of the offense for which Appellant was convicted beyond a reasonable doubt, we hold that the evidence is sufficient to support Appellant's conviction. Accordingly, we overrule Appellant's first issue.

B.  *Admission of Appellant's Recorded Interview*

In his second issue, Appellant contends that the trial court abused its discretion when it overruled his objection to the admission of an excerpt from one of his recorded interviews with law enforcement. Appellant complains that a copy of this interview was produced to his trial counsel only three days before his trial was scheduled to begin, and that the late disclosure prejudiced his defense.

When the State sought to introduce a five-minute clip from this interview, Appellant's trial counsel objected to the admission of the interview excerpt. The trial court overruled the objection and admitted the interview excerpt. Appellant contends that (1) the trial court erred when it admitted this evidence and (2) his rights to effective assistance of counsel and due process were violated by the State's late disclosure and the trial court's admission of this evidence. *See* U.S. CONST. amends. VI, XIV; TEX. CONST. art. I, §§ 13, 19.

In this case, Appellant filed a motion for discovery *with the trial court* two years prior to the commencement of trial; however, Appellant's motion did not specify a date or deadline for the State to produce the items requested in his motion. Further, and importantly, Appellant's motion for discovery—although filed with the trial court—was never presented to the trial court for determination; therefore, the trial court never addressed or ruled on the motion. Consequently, the State was never ordered or directed to disclose to Appellant any of the evidence, items, or other information that Appellant had identified and requested in his motion.

Article 39.14 of the Code of Criminal Procedure provides that a defendant *may* serve the State with a discovery request. *Morales v. State*, No. 11-17-00055-CR, 2019 WL 1428580, at *2 (Tex. App.—Eastland Mar. 29, 2019, no pet.) (mem. op., not designated for publication); *see* TEX. CODE CRIM. PROC. ANN. art. 39.14(a) (West Supp. 2023). However, when, as in this case, a defendant instead files his motion for discovery with the trial court and the trial court does not act upon it, the State's obligations under Article 39.14 are not triggered. *Morales*, 2019 WL 1428580, at *2 (citing *Majors v. State*, 554 S.W.3d 802, 807–08 (Tex. App.—Waco 2018, no pet.) (Article 39.14 requires that a discovery request should be directed to and served on the State and that a "motion for discovery," unless presented to and ruled on by the trial court, does not trigger the State's disclosure duties under

Article 39.14)); *see also Sopko v. State*, 637 S.W.3d 252, 257 (Tex. App.—Fort Worth 2021, no pet.).

A defendant's discovery motion may request action by the trial court, that is, an order from the trial court directing the State to produce evidence, items, or other information. *Majors*, 554 S.W.3d at 807 (citing *Mitchell v. State*, 982 S.W.2d 425, 427 (Tex. Crim. App. 1998)). Conversely, a self-operating "request" is directed to a party and instructs that party to take some affirmative action without the necessity of trial court intervention. *Id.* at 808 (citing *President v. State*, 926 S.W.2d 805, 808 (Tex. App.—Austin 1996, pet. ref'd)). Thus, because Appellant never obtained a ruling from the trial court on his motion for discovery, the State had no duty to produce the evidence, items, and other information that was requested and identified in the motion. *Id.* Moreover, because Appellant neither obtained a ruling on his motion from the trial court nor objected to the trial court's refusal to rule on it, he has waived any complaint that he now advances on appeal on this issue. *See* TEX. R. APP. P. 33.1(a).

Appellant has also waived this issue for our review for another, independent reason: his failure to request a continuance of the scheduled trial setting to review what he now contends was not timely disclosed by the State. In the event of an "untimely" disclosure of requested evidence or other information, the proper remedy is for the complaining party to request a continuance, at the latest when the State proffers the evidence. Failure to do so constitutes a waiver of the "untimeliness" complaint. *See Rodriguez v. State*, 630 S.W.3d 522, 524–25 (Tex. App.—Waco 2021, no pet.) (citing *Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. 1982)); *Byrd v. State*, No. 02-15-00288-CR, 2017 WL 817147, at *5–6 (Tex. App.—Fort Worth Mar. 2, 2017, no pet.) (mem. op., not designated for publication) (appellant waived his complaint under Article 39.14(a) by failing to request a continuance); *see also Martin v. State*, 176 S.W.3d 887, 900 (Tex. App.—Fort Worth 2005, no pet.).

The circumstances in *Rodriguez* closely parallel those before us. In *Rodriguez*, the State disclosed evidence to defense counsel on the same day that the evidence was offered at trial. *Rodriguez*, 630 S.W.3d at 524. The trial court admitted the evidence over appellant's objection that the evidence was not timely disclosed under Article 39.14(a). *Id.* The court of appeals held that appellant waived his complaint for appellate review because he failed to request a continuance when the evidence was offered at trial. *Id.* at 525. Here, Appellant did not request a continuance when the evidence (Appellant's recorded interview) was produced by the State three days before his trial commenced, at the time the complained-of evidence was offered at trial by the State, or at any time between those dates. As such, in accordance with *Rodriguez*, with which we agree, we hold that Appellant has waived his complaint for our review. *See id.*

Nevertheless, even if Appellant had not waived his complaint, and assuming the State had a duty to disclose the recorded interview more promptly, Appellant has not shown that the State acted in bad faith in failing to produce the recorded interview sooner. Appellant and the State cite to case law that addresses the consequences if the State violates the trial court's discovery order; however, and as the State emphasizes, no such order was entered or signed by the trial court here.

In cases where the trial court issues a discovery order that includes deadlines for the State's disclosure obligations, the State's "untimely" disclosure of items that are identified in the trial court's order is reviewed and analyzed for whether the State "willfully withheld" evidence in disobedience to the trial court's order. *See Francis v. State*, 428 S.W.3d 850, 855 (Tex. Crim. App. 2014) (citing *Hollowell v. State*, 571 S.W.2d 179, 180 (Tex. Crim. App. 1978)). But when, as in this case, an appellant complains on appeal that evidence was not timely disclosed by the State in violation of Article 39.14(a), we must determine whether the State acted in "bad faith" in failing to comply with its disclosure obligations. *Morales*, 2019 WL

11

1428580, at \*2 (citing *Ex parte Napper*, 322 S.W.3d 202, 231 (Tex. Crim. App. 2010)). "Bad faith" is more than being aware that one's action or inaction could result in the loss of evidence. *Id.* Rather, "bad faith" involves an improper motive, such as a personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that is only potentially useful. *Id.* The existence of a discovery request that is either served on the State or filed with the trial court does not dispense with the necessity for the complaining party to show bad faith on behalf of the State. *Id.*; *see Ex parte Napper*, 322 S.W.3d at 231 (citing *Illinois v. Fisher*, 540 U.S. 544, 548 (2004)).

Here, the State advised the trial court that the complained-of evidence was referenced and summarized elsewhere in offense reports multiple times, but those reports are not contained in the record before us. The State also explained that they believed a copy of the recorded interview had been provided to Appellant's trial counsel well in advance of trial; however, they later discovered that they *may* have, inadvertently, not done so. Upon becoming aware of this potential oversight, the State immediately provided a copy of the recorded interview to Appellant's trial counsel. After this and additional discussions with the State and Appellant's trial counsel, the trial court overruled Appellant's "untimely disclosure" objection. Under these circumstances, and based on the record before us, we conclude that there is no evidence that the State acted in "bad faith" when it disclosed, possibly again, the complained-of interview to Appellant's trial counsel three days before the commencement of Appellant's trial.[2]

---

[2]We also note that the State's certification of discovery pursuant to Article 39.14(j), which is the method whereby the State certifies and defense counsel acknowledges the disclosure of discoverable information, lists and identifies the complained-of recorded interview as being included in the State's file, although the State later explained that, by a potential inadvertent oversight, the recorded interview may not have been included in its file at the time that Appellant's trial counsel signed the certification of discovery. By his signature on the State's certification of discovery, Appellant's trial counsel certified and attested that he had been provided a copy of the State's file or, at a minimum, he had the opportunity to review the file

The trial court's decision to admit the complained-of interview excerpt was within the zone of reasonable disagreement. *Beham*, 559 S.W.3d at 478. Furthermore, Appellant has waived any complaint on this issue. Therefore, because Appellant's complaint is waived and, in any event, the trial court did not abuse its discretion, we overrule Appellant's second issue.

### C. *Assessment of Fees and Costs*

In his third, fourth, and fifth issues, Appellant complains that the trial court erroneously assessed various costs and fees against him. The State agrees that these costs and fees were improperly assessed and both parties request that we modify the district clerk's amended bill of costs accordingly.

### 1. *Court Costs*

In his third issue, Appellant complains that the trial court erred in its assessment of $290 for state and local consolidated court costs. According to Appellant, the trial court, in assessing these costs, erroneously relied on the statute that applies to offenses that are *committed* on or after January 1, 2020.[3] The offense for which Appellant was *convicted* occurred on or about December 27, 2019, and the jury convicted him of this offense on July 20, 2022. Contrary to Appellant's assertion, the complained-of court costs were correctly assessed against Appellant in accordance with the statute that applies to the imposition of court costs in criminal proceedings in effect at that time of Appellant's *conviction*, that is, pursuant to Section 51.608 of the Government Code. *See* TEX. GOV'T CODE ANN. § 51.608 (West 2023) (court costs must be assessed in the amount established

---

and request copies of the file's contents. Thus, assuming that the complained-of interview was not included in the State's file, Appellant's trial counsel should have recognized this omission either when or before he certified and attested that he had reviewed the contents of the State's file and/or had been provided a copy of the file's contents.

[3]*See* Act of May 23, 2019, 86th Leg., R.S., ch.1352, § 1.05, 2019 Tex. Gen. Laws 3981, 3985 (the Cost Act).

by law at the time of the defendant's *conviction*); *see* District Clerk's Felony Conviction Court Cost Chart, https://www.txcourts.gov/media/1445512/district-clerks-felony-conviction-court-cost-chart.pdf; *see also* TEX. LOC. GOV'T CODE ANN. § 133.102(a)(1) (West 2021). Thus, the trial court did not err in its assessment of the court costs of which Appellant complains. *See Hayes v. State*, No. 11-21-00251-CR, 2023 WL 4002765, at *10 (Tex. App.—Eastland June 15, 2023, no pet.) (mem. op., not designated for publication).

Court costs are legislatively mandated obligations that result from a criminal conviction. *See Amparan v. State*, No. 11-21-00162-CR, 2022 WL 17684377, at *4 (Tex. App.—Eastland Dec. 15, 2022, no pet.) (mem. op., not designated for publication). The imposition of court costs against a criminal defendant is a "nonpunitive recoupment of the costs of judicial resources expended in connection with the trial of the case." *Johnson v. State*, 423 S.W.3d 385, 390 (Tex. Crim. App. 2014 (quoting *Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011)). Appellant acknowledges that he did not object to the assessment of court costs in the trial court, but, relying on *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016), he asserts that a challenge to the improper assessment of court costs may be raised for the first time on appeal. Based on the circumstances before us, we agree.

Appellant was sentenced for the convicted offense on July 21, 2022. The district clerk's amended bill of costs was filed on August 30, 2022. *London* holds that an appellant may not be faulted for failing to object to the assessment of court costs when he was not given the opportunity to do so. 490 S.W.3d at 507. Because the costs included in the district clerk's amended bill of costs were not imposed in open court, Appellant did not have an opportunity to object to this assessment; therefore, he may challenge the imposition of these costs for the first time on appeal. *See id.* ("[A]n appellant may generally challenge the imposition of even mandatory

14

costs for the first time on direct appeal when those costs are not imposed in open court and the judgment does not contain an itemization of the imposed court costs.").

The district clerk's amended bill of costs shows that Appellant was assessed consolidated court costs of $290—$185 for State Consolidated Court Costs and $105 for Local Consolidated Court Costs. *See* LOC. GOV'T §§ 133.102(a)(1), 134.101(a). As we have said, the statute that governs the imposition of court costs in criminal proceedings is Section 51.608 of the Government Code. GOV'T § 51.608. In 2019, as it does today, Section 51.608 states that, "[n]otwithstanding any other law that establishes the *amount* of a court cost collected by the clerk of a district . . . court from a defendant in a criminal proceeding based on the law in effect on the date the offense was committed," i.e., Sections 133.102(a)(1) and 134.101(a) of the Local Government Code as amended by the Cost Act, "the amount of a court cost imposed on the defendant in a criminal proceeding *must* be the amount established under the law in effect *on the date the defendant is convicted of the offense*." *Id.* (emphasis added).

Because Appellant was *convicted* after January 1, 2020, the mandatory state and local consolidated court costs to be assessed against him for his conviction are $185 and $105, respectively. *See* LOC. GOV'T §§ 133.102(a)(1), 134.101(a). Therefore, the trial court did not err when it assessed these courts against Appellant. *Hayes*, 2023 WL 4002765, at *10. Accordingly, we overrule Appellant's third issue.

### 2. *Court-Appointed Attorney's Fees*

In his fourth issue, Appellant complains that the trial court erred when it ordered Appellant to pay the attorney's fees awarded to his court-appointed attorney. Appellant was found to be indigent at the outset of the case, and there is no evidence of any material change in his financial circumstances. The State concedes that because the trial court made no additional findings indicating a change in Appellant's financial circumstances, it is presumed that Appellant remained indigent

throughout the proceedings; therefore, the court-appointed attorney's fees of $16,311.73 assessed against Appellant should be deleted from the district clerk's amended bill of costs.

An indigent defendant cannot be taxed the cost of services rendered by his court-appointed attorney unless the trial court finds that the defendant has the financial resources to repay those costs in whole or in part. *Smith v. State*, 631 S.W.3d 484, 501 (Tex. App.—Eastland 2021, no pet.) (citing *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010)). A defendant who has been found indigent is presumed to remain so for the remainder of the proceedings unless the trial court determines that a material change in the defendant's financial circumstances exists. CRIM. PROC. art. 26.04(p); *Cates v. State*, 402 S.W.3d 250, 251 (Tex. Crim. App. 2013). Thus, if the trial court determines that a defendant has the financial resources to offset in whole or in part the costs of the legal services provided to him by court-appointed counsel, the trial court shall order the defendant to pay a reimbursement fee that the trial court finds that the defendant is able to pay. CRIM. PROC. art. 26.05(g).

Here, there is no finding in the record or in the trial court's judgment of a material change in Appellant's financial circumstances. Therefore, Appellant is presumed to be indigent still and there is no factual basis to support a determination that Appellant could or should pay these fees. *See Cates*, 402 S.W.3d at 251–52; *Armstrong*, 340 S.W.3d at 765–66. Accordingly, Appellant's fourth issue is sustained, and the district clerk's amended bill of costs is modified to delete the assessment of court-appointed attorney's fees.

### 3. *Time Payment Fee*

In his fifth issue, Appellant complains that the trial court erred when it assessed a time payment fee of $15. Article 102.030 permits the assessment of a $15 time payment reimbursement fee if a defendant "pays any part of a fine, court

costs, or restitution, or another reimbursement fee, on or after the 31st day after the date on which a judgment is entered assessing the fine, court costs, restitution, or other reimbursement fee." CRIM. PROC. art. 102.030(a)(2). However, in *Dulin v. State*, the Court of Criminal Appeals determined that "[t]he pendency of an appeal stops the clock for purposes of the time payment fee." 620 S.W.3d 129, 133 (Tex. Crim. App. 2021).

Consistent with *Dulin*, Appellant requests that we modify the district clerk's amended bill of costs to delete the $15 time payment fee because it was prematurely assessed. We agree that such an adjustment is required. Accordingly, Appellant's fifth issue is sustained, and the district clerk's amended bill of costs is modified to delete the prematurely assessed $15 time payment fee, without prejudice to this fee being assessed later if, more than thirty days after the issuance of the appellate mandate, Appellant has failed to completely pay any court costs or fees that he owes. *See Dulin*, 620 S.W.3d at 133.

We have the authority to modify and reform judgments when the necessary information is available to do so. TEX. R. APP. P. 43.2(b); *see Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Based on the assessment of court costs, the improperly assessed court-appointed attorney's fees, and the inaccurately assessed time payment fee, we (1) modify the trial court's judgment in the section entitled "Court Costs" to show $290, the correct amount of court costs assessed against and due from Appellant as indicated in the district clerk's amended bill of costs, and (2) modify the district clerk's amended bill of costs to delete the court-appoint attorney's fees and the time payment fee previously assessed against Appellant.

IV. *This Court's Ruling*

As modified, the judgment of the trial court is affirmed. *See* TEX. R. APP. P. 43.2(b).


W. STACY TROTTER

JUSTICE


December 7, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.